# SUPREME COURT.

JANUARY TERM—1857.

### JOHN C. JONES *vs.* JOHN MEEK.

AN award of a lot of land by the Board of Land Commissioners, by metes and
bounds, does not extinguish a right of way passing through a portion of such
lot, and enjoyed by the defendant up to the time the award was made.

A right of way merely is not, properly speaking, a claim for land, and it was
not necessary for the preservation of such right that a specific claim should
be presented to the Land Commissioners for confirmation.

A non-user of the easement for the term of five years would raise a presumption
of an abandonment, particularly if the servient tenement had passed into the
hands of a purchaser without notice of the easement.

The owner of the dominant tenement must enjoy his right of way over the ser-
vient tenement in such a manner as not to interfere unnecessarily with the
rights of the owner of the latter.

Judge ROBERTSON delivered the decision of the Court as
follows:

This is an action brought by the plaintiff at the last term of
this court to recover possession of a strip of land, about ten or
twelve feet wide, by seventy feet in length, with damages for
its wrongful occupation by the defendant. The parties waived
a trial by jury, and submitted the case to the decision of the
Court, with the understanding that judgment might be given
during the vacation, as of the last term.

The strip of land in question is comprised within the bound-
aries of a lot, situated on the northeast side of Marin street, in
Honolulu, awarded, by the Board of Land Commissionors, on
the 15th of April, 1851, to Francis Jones, Rosalie Jones, and
John C. Jones, heirs of Lahilahi Marin, under claim No. 810.
Francis Jones died in 1850, having devised all his real estate,
including his undivided interest in this lot, to the plaintiff, who
by a decree of partition, made on the 23d of April, 1853, be-
tween him and Rosalie, became sole owner of said lot.

Vol. II.     2

It appears that in ancient times this lot was the property of the late Don Francisco de Paulo Marin ; that over it run a public highway, some twenty feet wide, nearly in the line of the strip of land now in dispute, trending off in a northwesterly direction along the *mauka* side of the lot ; and that the said Don Francisco Marin gave the portion of the lot which lay on the western side of the highway to his daughter Lahilahi, and the part which lay on the eastern side to Miele, another of his daughters, who lived, according to ancient custom, with Capt. Thomas Meek, the defendant's brother. After Thomas Meek left the kingdom, the eastern part of the lot came into the possession of Lahilahi Marin, in some way which does not now clearly appear. Capt. Thomas Meek was the owner of a lot, now owned by defendant, abutting on one side upon the old highway and the land of Don Francisco Marin, and on the other side upon King street, for which lot the defendant obtained a Royal Grant on the 3d of September, 1839. In or about the year 1839, when the present streets of Honolulu began to be laid out, Governor Kekuanaoa ordered the old highway to be closed, and a dispute having arisen between Lahilahi and the defendant, about the possession of a strip of land over which the highway ran ; the Governor, in settling the dispute, divided the strip of land which lay between the lots of the parties, and Lahilahi moved out her stone fence accordingly. The Governor directed that the eastern half of that part of the highway, which ran through Lahilahi's land, from what is now Marin street up to a gate on the makai side of defendant's lot, should be left open as a private way for the use of defendant and his people in common with Lahilahi and her people, in which arrangement, the Governor testifies, that Lahilahi acquiesced. One of the plaintiff's witnesses, who was present, states that defendant appeared to be excited and displeased about the arrangement, and said several times that they might shut up the whole strip, for he did not wish to have it open. Some time afterwards the defendant complained to the Governor that Lahilahi was attempting to shut up the way, and the Governor told the defendant to tear down any obstructions that Lahilahi might erect, and keep the way open in accordance with his decision. Again, in 1845, the dispute was renewed, and the

John C. Jones *v.* John Meek.

Chiefs in council appointed the late Mr. Richards and some other person to settle it, which they did by re-affirming the dicision of the Governor. Mr. Metcalf testifies that, when he came here, in 1842, the way was open through to defendant's gate; that he frequently passed in to defendant's premises by that way; and that on one side of it stood the fence of Lahilahi, and on the other side a stick fence. It appears that, in 1843, Lahilahi erected two grass houses so as partially to obstruct the way, and about the same time walled up the end nearest to Marin street, thus entirely preventing the defendant from using it. The grass houses were consumed by fire in 1850, when the defendant immediately re-asserted his right of way through to Marin street, and has ever since kept it open. In 1854, the defendant erected a high wooden fence along the eastern side of the way, parallel with the old stone fence, and placed a gate at the end nearest Marin street, so as completely to enclose the alley. The gate has also been locked usually every night by defendant's direction. The plaintiff claims that by these acts the defendant has wrongfully taken possession of the strip of land to the exclusion of plaintiff's rights.

The first question to be determined is, has the plaintiff established his title to the strip of land in question? We think he has done so, conclusively. We have already stated how he became solely possessed of the entire interest in the lot which was formerly held by the three children of Lahilahi, of whom he is one, as tenants in common. The award to them, by the Board of Land Commissioners, of the entire lot, by metes and bounds, including the strip in dispute, being made without any reservation of, or counter-award for, any rights of the defendant, or any other third party, within those metes and bounds, is conclusive as to the title, against all the world. An instance of such a reservation and counter-award as is here indicated, will be found in the case of Kalama *vs.* M. Kekuanaoa and John Ii, recently decided in this Court, where the Land Commission, while adjudging that the Government owned the entire premises in fee simple, reserved for and awarded to Kailio a right of residence for life on one third part. (See *Polynesian* of February 28th, 1857.)

It is contended, however, on the part of the defendant, that

the decision of the Governor, in 1839, requiring Lahilahi to leave open a way for defendant's use, vested in him either the absolute fee in the soil, or at least a right of way over it. While we are clearly of opinion that the Governor's decision did not vest the fee of the land in the defendant, we think it unquestionably amounted to a valid grant of a right of way, in favor of the tenement owned by the defendant, which right attached upon the servient tenement, in the possession of Lahilahi. But, says the plaintiff, admitting that the Governor's decision did give the defendant a right of way, that right was annihilated by the award of the Land Commissioners, in 1851, which reserves nothing. We think this is an unsound argument, for, if the defendant still had a right of way up to the time that the award was made, such right was not extinguished by the award, inasmuch as it was not necessary to the preservation of a right of way, that a specific claim for such right should be presented to the Land Commissioners for confirmation. Their main business was to adjudicate upon titles to land; but a claim to a right of way merely, which gives no title to the soil, but only a right to pass over it, is not, properly speaking, a claim for land. Undoubtedly the Board of Land Commissioners did, incidently, adjust and settle, in many cases, disputes in regard to rights of way, rights of piscary, and water privileges; and had the parties in this instance submitted the claim for a right of way to the adjudication of the Board, as incident to the settlement of their land claims, we think its decision would have been binding. The defendant has proved that, in May, 1847, he presented his deed, dated 3d September, 1839, to the Land Commission, together with a survey of his lot, which he had procured to be made by Mr. Metcalf, on which survey defendant had a memorandum made, to the effect that his lot had the privilege of a road twenty-five feet wide, over plaintiff's land; and that sometime afterwards the Commissioners gave him leave to withdraw his papers, the President, Judge Lee, having told him that any action of the Board upon his claim was unnecessary, as they could give him no better title than he already possessed, under his grant from the King and Premier. This cannot be construed into a confirmation, by the Land Commission, of defendant's claim to a right of way,

twenty-five feet wide, but had the defendant allowed his claim to remain before the Board, to be considered and decided in connection with the claim of Lahilahi's heirs, the Board might in that case have examined and settled the claim for a right of way, as an incident to the land claims of the parties. As it is, the defendant's claim for a right of way was not affected, favorably or unfavorably, by the action of the Land Commissioners.

It is contended, on the part of the plaintiff, that the defendant lost his right to the easement which he claims by non-user, and that there is evidence sufficient to raise the presumption of an abandonment of the right on his part. It is not shown, says the plaintiff, that when Lahilahi built the two grass houses on the alley, in 1843, and walled up the end of it which communicated with Marin street, the plaintiff resisted the erection of these obstructions, or took measures to maintain his claim ; on the contrary, it is proved that for a period of about five years, he ceased to enjoy the right of way, and it became extinct. If it appeared clear to us that the non-user for a period of five years had been voluntary on the part of the defendant ; that he knew and acquiesced in the disturbance of his easement on the part of Lahilahi ; and that he failed, for so long a period, being under no disability, or absent from the kingdom, to assert his right by legal steps, we should be inclined to hold that the presumption of an abandonment on his part did arise, and that he had lost his right, particularly if the servient tenement had passed into the hands of a purchaser having no notice of the easement. But such is not the case. On the contrary, it is clear from the fact that, in 1845, the Chiefs in council appointed a committee to settle the renewed dispute, which committee re-affirmed defendant's rights, that he did not acquiesce in the acts of Lahilahi, and that he had re-asserted his right of way. While it also appears, by the testimony of Mr. Metcalf, that in April, 1847, defendant still had a gateway opening into the alley, which his son unlocked to let Mr. Metcalf pass through, for greater convenience in making the survey of the premises, and upon Mr. Metcalf's enquiring why he kept the gate locked, he answered, that he did so to prevent the passage through his premises from being made a thoroughfare. We think it is clear, therefore, that defendant has neither lost, nor abandoned his right of way, and that it is a good, subsisting right at this day.

But it is contended by the plaintiff, that even if defendant has a right of way, he is still a trespasser, for the right to the easement gives him no authority to enclose and assume possession of the land over which the way passes, without the consent of the owner of the fee. This is unquestionably correct, and while the owner of the dominant tenement cannot be disturbed in the proper enjoyment of the easement, he must enjoy it in such a manner as not to interfere, unnecessarily, with the rights of the owner of the servient tenement, for every privilege in derogation of the rights of the owner of the land is viewed with jealousy by the law, and is confined to the limits and objects prescribed by the grant. (Taylor *vs.* Hampton, 4 McCord, 96, cited in Gale & Whatley on Easements, 264, Note 2.) There can be no doubt, we think, that in dividing the strip of land in question, by a fence, from the other parts of plaintiff's lot, and in erecting a gate at the lower end of it, which gate is locked in the night time, whereby the defendant has assumed control over the land, to the exclusion of the plaintiff's right to pass and repass over it by night or day, and to use it at all times in such a way as not to disturb the defendant's easement, the defendant has done such acts as amount, in law, to an ouster of the plaintiff. Lord Coke says: *Disseisnam satis facit, qui uti non permittit possessorem, vel minus commode, licet omnino non expellat.* He makes disseisin enough, who hinders possession to be enjoyed, or less fitly, though he does not expel altogether. (Thomas' Coke's 1st Inst., vol. 3, p. 3.)

The last question to be considered is, as to the amount of damages, which the plaintiff is entitled to recover, for the wrongful dispossession. In our opinion, the actual value of the strip of land in question to the plaintiff can be but small, so long as the defendant has a right of way over it. The only way in which, it would seem, plaintiff can derive benefit from it, is by the use of it as a passage through the centre of his lot, thus facilitating the egress and regress of tenants on the *mauka* part of it. It does not appear that, even in this way, plaintiff could have derived any benefit from it heretofore, and therefore we think he is not entitled to recover any thing beyond nominal damages. It is claimed that he is entitled to recover his reasonable expenses, for counsel's fees, and other disbursements,

incurred in prosecuting his rights. We are aware that a party after a recovery in ejectment, bringing a suit for mesne profits, will recover as part of his damages, the costs of the ejectment suit ; but we are not aware of any instance in which any thing beyond the taxed costs have been allowed. In this country the plaintiff sues both for possession of the premises, and for mesne profits or damages, in one suit, and a judgment in his favor for the possession carries costs with it as of course.

Our judgment is, that the land in dispute belongs to the plaintiff, but that the defendant has a right of way over the same ; and that plaintiff recover possession of the land, with one dollar damages, and the costs of this suit.

MARCH 24th, 1857.

Mr. Harris for plaintiff.

Mr. Campbell for defendant.