## In re BOUNDARIES OF THE AHUPUAA OF PAAKEA.

### APPEAL FROM BOUNDARY COMMISSIONER OF OAHU.

### APRIL TERM, 1884.

### JUDD, C. J. ; McCULLY AND AUSTIN, JJ.

A person taking a Mahele Award of an Ili of land, described by metes and bounds, is precluded from claiming anything more as belonging to the Ili.

*Boundaries of Kewalo,* 3 Hawn., 9, followed.

The Court, upon consideration of the evidence before the Commissioner, finding that it sustained the appellant's case, reverses the decision of the Commissioner.

OPINION OF THE COURT, BY McCULLY, J.

By appeal from the Boundary Commissioner of Oahu. The application for settlement of boundaries is made by Mrs. Bernice Pauahi Bishop, her husband joining in the petition. The claim of the petitioners is opposed by the Government in respect to the boundary line on the western, that is, the Honolulu, side of the land.

The determination of the controversy depends mainly on the finding as to what may be termed an issue—namely, whether the disputed territory falls within the Ili of Keauhou or the Ili of Paakea, both being Ilis or ancient divisions of Waikiki.

The Ili of Keauhou was awarded to Haumea pursuant to the "Mahele" or division of lands between the King and Chiefs, and the award issued by surveyed metes and bounds. This surveyed grant does not include the disputed territory. By the authority of the case of *Boundaries of Kewalo*, 3 Hawn., 9, Haumea, having accepted for the Ili of Keauhou certain surveyed premises, would be precluded from claiming any thing more as belonging to Keauhou. No claim is made on behalf of Haumea, but it is contended that if in fact his surveyed boundaries did not enclose all which belonged to Keauhou by its ancient boundaries, the remnant would belong to the Government as unawarded land  It is correct, in our opinion, that the question for determination is what are the boundaries of Paakea as held in ancient times. But the taking of the limited award for Keauhou has an important bearing on the case, in view of the circumstances attending it. The land of Paakea, whatever its extent might be, was the property of the Princess Victoria Kamamalu, whose guardian was the late Governor Kekuanaoa, her father. The testimony of the witnesses on both parts is that between Kekuanaoa and Haumea there was a dispute as to the possession and ownership of the land now in controversy. Haumea was a chief of low degree belonging to the Island of Hawaii. The witnesses generally describe the attitude of Haumea as maintaining a claim, but relinquishing it upon the urgency of Kekuanaoa, giving it up, some say, on account of regard for Kamamalu. The testimony is that Kekuanaoa claimed it as being Paakea, and Haumea as being Keauhou. We have no reason to think that Kekuanaoa claimed land which was clearly and undis-

putably known to be Keauhou. With all the weight and force of his strong character he could not have coerced such a surrender. Keauhou having been awarded to Haumea, he was secure in his right to whatever was included therein, if it was well known. The fact that he abandoned his claim is a pregnant circumstance to show that there was at least an uncertainty about the boundary. The character of the land, as we have had occasion to remark in some other boundary cases, may have occasioned this uncertainty. The land was not of the kind which was applied to valuable uses in ancient times, and indeed most of it is of a description of little value at the present time. The native testimony now supports both claims. It would appear probable that even in ancient times there were some boundary lines left indefinite.

Another description of evidence introduced is the recital in sundry awards of kuleanas that were in or adjacent to Keauhou or to Paakea. Whatever is the force of these recitals, there are some on both sides of the case. But we do not consider them conclusive. They are descriptions incorporated in the survey, made by surveyors, *ex parte*, and without necessarily implying investigation. The surveys being then incorporated in the awards, do not import that the Board of Land Commissioners determined that these collateral descriptions were correct, and that the land named as adjacent was in fact such land.

The evidence goes to show that Kekuanaoa remained in possession of the disputed territory and during a series of years enjoyed the usufruct of the land, which was chiefly loose stone taken and sold for ships' ballast.

The facts that at one time the female prisoners were kept at this location, and that in 1853 there was a Government smallpox hospital on the land, do not controvert the claim of private ownership. Kekuanaoa was the Governor of Oahu, and in many respects he governed after old-time methods. It would not have been inconsistent with him to have kept the women on premises of his own, or his ward's, or to have furnished a site for a pesthouse on a remote, little valued piece of her private property. There was an emergency and this location was suitable. In like manner in the year 1881 a smallpox hospital was erected on this site by the permission of the late Ruth Keelikolani, then holding

this estate. Neither does it seem to us conclusive against this being held as private property that the buildings had been removed from an adjacent location upon the objection of the owner, and presumably were moved to a location belonging to the Government. They were removed to a location belonging to or controlled by the Governor, who as a large landowner could grant such a privilege.

Upon consideration of all the testimony, which is voluminous, and of the carefully prepared decision of the Boundary Commissioner, we are of opinion that the decision should be reversed and that the boundary of Paakea be as claimed by the petitioners and set forth in their map and survey.

*F. M. Hatch,* for the petitioners.

*W. A. Whiting,* contra.

Honolulu, May 30, 1884.