The Territory of Hawaii filed an application in the land court for the registration of its title to two certain pieces of land situate at Kakaako in Honolulu. The examiner to whom the application was referred reported *Page 667 
adversely to the application. The Territory elected to proceed in spite of the adverse report. Upon the issuance of summons the trustees of the estate and under the will of Bernice Pauahi Bishop filed an answer claiming to be the owners of the land which was the subject of the petition. After trial the land court held that the Territory had no title. Thereupon the Territory appealed to a jury and asked the court to frame issues of fact to be submitted to the jury. This the land court refused to do, on the ground that in spite of all the evidence submitted by the Territory the land commission award under which the trustees claim would have to be regarded as conclusive, that there was absolutely no evidence tending to show fraud in the procurement of the land commission award and that therefore there were no issues of fact to be submitted to the jury. The case comes to this court by writ of error.
On January 27, 1848, the King, Kamehameha III, signed his portion of a mahele, in the usual form, consenting that Mataio Kekuanaoa go before the board of land commissioners, who were entrusted with the power and the duty to create titles to lands in individuals and to divide a portion of the lands originally belonging to the King amongst his chiefs and his common people, and procure an award for "Kaakaukukui, an ili in Honolulu". On the same day and doubtless as a part of the same transaction M. Kekuanaoa, father and guardian of the property of Victoria Kamamalu, and Ioane Ii, guardian of the person of Victoria Kamamalu, signed a statement approving of the mahele whereby the King was to have the lands of "Puunui 1, 2 and 3, ilis in Honolulu for the Fort". On April 29, 1854, the land commission made an award (L.C.A. 7712, apana 6) to "M. Kekuanaoa for Victoria Kamamalu", in other words, an award in favor of Victoria Kamamalu, reciting that she had asked for *Page 668 
her land of Kaakaukukui, an ili in Honolulu, and awarding to her a tract of land described therein by metes and bounds prepared by William Webster, a surveyor. This tract of land contained an area of about eighty-three acres. The award contained the usual exception, "aka, koe nae na kuleana o Kanaka maloko" ("excepting, however, the kuleanas of the natives therein"). On April 3, 1861, R.P. 4483 was issued in favor of Victoria Kamamalu, based upon L.C.A. 7712, apana 6, confirming her title to "i kela wahi a pau loa ma Kaakaukukui, iliaina ma Honolulu, Kona, mokupuni o Oahu, penei na mokuna", which being translated means "all of that land situate at Kaakaukukui, an ili in Honolulu, Kona, in the Island of Oahu, bounded and described as follows". The same description by surveyor's metes and bounds was incorporated in the patent as in the award.
One of the pieces of land claimed in this proceeding by the Territory contains an area of 17.20 acres and the other an area of 1.162. Both pieces are situated wholly within the outer boundaries of the land described in the award and the patent to Victoria Kamamalu. Neither of them is expressly excepted or reserved, in any language whatsoever, from the award or the patent. The claim of the Territory is that these two pieces of land constitute together one of the ilis of Puunui which, under the mahele above recited, fell to the portion of the King, or are leles of one of the ilis of the King, — which of these two the claim is does not appear definitely from the record. The evidence introduced by the Territory at the trial in the land court was partly oral and partly documentary. It was shown that an Hawaiian, Kauwe, who had lived in Kakaako and its neighborhood for a long period of years, had gone upon the ground with several representatives of the Territory and had indicated to them the boundaries, as he had had them *Page 669 
pointed out to him by other Hawaiians, of the land which he said was Puunui and was "Fort land". An affidavit of Joseph Keohokii was received in evidence in which he deposed that he had heard from one Kahili, "a konohiki at Kakaako", that "a certain piece of land at Kakaako was a lele of Puunui" and that Kahili had pointed out "the lele to me"; also that certain fishing rights "belonged to the ili of Puunui". In the affidavit, however, there is no description of the boundaries or a precise location of the Puunui at Kakaako.
The documentary evidence included the following: L.C.A. 677A to M. Kekuanaoa, dated April 10, 1849, described one of its nine courses as running "ma ka aina o Aupuni" ("along the land of the government"), and under its diagram contained the statement, "Eia ke kuleana He lihi ia no kuu aina no Puunui" ("This is the kuleana, the boundary of my land at Puunui"). L.C.A. 2045 to Kauwahi (no Puniai), dated April 29, 1853, described the land as "pahale ma Puunui Lele Alialia ma Honolulu Oahu" ("houselot at Puunui, a salt-drying lele at Honolulu, Oahu"). On August 29, 1853, the privy council resolved that fee simple title be granted to Puniai "for his land, claim number 2045, in Puunui". L.C.A. 10605 to Iona Piikoi, dated June 19, 1852, for land at Pualoalo, apana 3, contained this description in part: "alaila iho pololei ikai ma na Puunui o ke Aupuni, a hiki i ka Puunui o Dr. Rooke ma, alaila * * * ma Puunui o Dr. Rooke a me Kaakaukukui" ("thence go straight towards the sea along the Puunuis of the government, to the Puunui of Dr. Rooke, thence * * * along the Puunui of Dr. Rooke and Kaakaukukui"). L.C.A. 10605, apana 7, to Kamakee Piikoi, dated June 19, 1852, described one of its courses as running along "Puunui Aupuni" ("the Puunui of the government"). *Page 670 
On December 15, 1851, Kekuanui filed a claim with the land commission (79 F.L.) the translation of which is in part as follows: "I am submitting my claim for land in Puunui 1, in the ili of the Fort land in Honolulu". Kahakai, a witness who testified before the commission in support of Kekuanui's claim, referred to the kuleana as situate "at Puunui, ili of Honolulu, a pond and a small pond, a place for drying salt, the taro patches are mauka and the pond and salt place are makai; the boundaries are as follows: mauka is Kaukea's land, Waikiki the river, makai Kaliu, Ewa Puunui of Nahalelauhala"; and Uhuuhu, another witness, said that his "knowledge is the same as above testified by Kahakai". It does not appear that any action was taken by the land commission upon this claim.
On August 19, 1873, Kapolei filed with the commissioner of boundaries a petition to adjudge the boundaries of the "Lele of Puunui", accompanied by a survey by J.W. Makalena, a private surveyor, of "elua Loko Ia me ka aina hana paakai ma Kakaako lele o Puunui Honolulu Oahu" ("two fish ponds with salt-making land at Kakaako, a lele of Puunui, Honolulu, Oahu"). The application was opposed on behalf of the government on the grounds, first, "that petitioner has a royal patent not including this piece and therefore excluding further claim for it" and, second, that "Puunui is a Fort land, any lele belongs to the konohiki, i.e., the government, not to private parties". It does not appear that any decision was rendered by the commissioner.
R.P. 3182, dated January 31, 1878, and R.P. 3183, dated February 1, 1878, granted to John Magoon land "situated at Puunui" and which was in fact within the outer boundaries of the land described in the L.C.A. to Victoria Kamamalu. This supposed error, however, was *Page 671 
later corrected by a formal release from the trustees of the Bishop estate and by a deed whereby the government conveyed to the trustees other land in exchange.
Comments relating merely to the weight to be given to these items of evidence adduced by the Territory would be out of place upon a consideration of this writ of error and are therefore omitted. As a matter of law, however, it is to be noted with reference to the elements of descriptions in awards of kuleanas made prior to April 29, 1854, the date of the award to Victoria, that they are not adjudications by the land commission that the persons or entities there named owned or were equitably entitled to the neighboring or adjoining lands thus incidentally mentioned. They furnish no aid in the construction of the award later made to Victoria. In making each of these awards of kuleanas what the land commission was adjudicating was that each of such lands was being given in fee simple to the applicants who had succeeded in showing some manner of equitable claim to those particular pieces. To whom the adjoining lands should be awarded, if they had not already been awarded, was not then being considered. The exactness of the references in the surveyor's description to adjoining lands was not then a matter of great importance. On this very subject this court spoke as early as 1884. "Another description of evidence introduced is the recital in sundry awards of kuleanas that were in or adjacent to Keauhou or to Paakea. Whatever is the force of these recitals, there are some on both sides of the case. But we do not consider them conclusive. They are descriptions incorporated in the survey, made by surveyors, ex parte, and without necessarily implying investigation. The surveys being then incorporated in the awards, do not import that the board of land commissioners determined that these collateral descriptions were correct and *Page 672 
that the land named as adjacent was in fact such land."Boundaries of Paakea, 5 Haw. 154, 156. In later considering the boundaries of the land to be awarded to Victoria the land commission was not bound by any of these incidental statements in the descriptions of kuleanas earlier awarded which seemed to indicate that certain lands belonged to the government or were parts of one or more of the Puunuis of the government. In fact, any mere statement that lands as yet unawarded belonged to the government would not be at that time inexact.
Kapolei, who filed in 1873 the petition for the adjudication of boundaries, and Kekuanui, who presented a claim to the land commission which was not acted upon, and his witness Kahakai and J.W. Makalena, the surveyor who prepared the description for Kapolei, were mere private parties, not officials of the government, and could not in any wise bind the land commission; nor can their acts or statements serve as aids in the construction of the award made by the land commission to Victoria.
There is no proof of any act or statement by the landcommission subsequent to the date of L.C.A. 7712, apana 6, in any wise inconsistent with the view that it had awarded to Victoria all of the land within the metes and bounds set forth in her award or justifying a construction of that award which would exclude any supposed Puunui of the government.
By an Act of the legislature, dated June 7, 1848, the lands of Puunui 1, Puunui 2 and Puunui 3, together with forty-nine other named lands, were "set apart for the use of the Fort in Honolulu to be cultivated by soldiers and other tenants under the direction of the governor of Oahu * * * according to the instructions of the Minister of the Interior * * * approved by the King in privy council." (2 R.L. 1925, pp. 2175, 2176.) By an *Page 673 
Act of May 20, 1851, which recited that "the reserve of lands, made by the law of the 7th of June, 1848, for the use of the Fort, in Honolulu, to be cultivated by soldiers or other tenants, under the direction of the governor of Oahu, has not been productive and consists of waste and scattered pieces interspersed with the lands of private individuals", that part of the Act of June 7, 1848, which set apart the fifty-two ilis of land (including the three Puunuis) for the use of the fort was repealed and the minister of the interior was directed to "cause surveys of such lands to be made, together with the native kuleanas therein, whether the same have been entered at the land commission or not", was authorized "with the consent of the King in privy council" to "grant royal patents for such kuleanas as may be awarded by said land commission, free of charge, to the claimants or occupants", was directed "out of such portions as may remain, after deducting the kuleanas of the natives and all other valid claims," to set apart a portion "for a public nursery and horticultural garden" and was further authorized to sell the remainder from time to time. (2 R.L. 1925, pp. 2181, 2182.)
It is expressly admitted by counsel for the Territory that the land commission had the power in 1854 to award to Victoria Kamamalu all of the land within the outer boundaries set forth in L.C.A. 7712, apana 6, and in R.P. 4483. He made it clear at the oral argument that the Territory's present claim is not based upon any supposed lack of power in the commission to include the two pieces now in question in the award to Victoria, but that it is based solely upon a question of construction of the award as to what the land commission intended to grant to Victoria by that award. The Territory's claim is that the two pieces of land now in controversy constituted an ili or ilis of Puunui or a lele *Page 674 
or leles of one or more of the government's three Puunuis and were intended by the land commission not to be included within the award to Victoria and did not pass by that award; that Puunui 1, Puunui 2 and Puunui 3 were ilis kupono, that is, independent ilis, originally under the supervision of a chief other than the konohiki of Kaakaukukui; that there is no difference in this respect between an award of land by name only and an award of land by metes and bounds. There can be no doubt that an award of an ahupuaa by name only did not carry with it an award of an independent ili included within the outer boundaries of the ahupuaa. Harris v. Carter, 6 Haw. 195. The reason for this is plain and that is that the independent ili was not, under ancient Hawaiian customs and nomenclature, a part of the ahupuaa and its chief owed no allegiance to the konohiki of the ahupuaa, while a dependent ili, on the other hand, was a part of the ahupuaa and was under the dominion of the same chief or konohiki. The case is no different than if the property awarded had been "the land called Black Acre". If within the outer boundaries of Black Acre there was a smaller piece of land immemorially known as White Acre, the latter would not pass as a part of the former for the very obvious reason that it was not a part of it and had never been so known. The situation is entirely different, however, when the award of the land commission is not of an ahupuaa or ili by name only, but is of the land situate within certain metes and bounds. The only meaning that the latter is susceptible of is that all of the land within those metes and bounds is intended to be awarded, excepting only as expressly reserved. See Harris
v. Carter, supra, 197, and Jones v. Meek, 2 Haw. 9, 11. The award to Victoria excepted nothing other than the kuleanas of the natives. It did not except any part of land claimed by the *Page 675 
government. It was all government land subject to award. There is no principle of ancient Hawaiian law that we are familiar with that would require or permit a construction that an award of land by metes and bounds does not carry with it a piece of government land within the outer boundaries set forth which it was within the power of the land commission at the time to award.
There was evidence at the trial, adduced by the Territory, which perhaps tended to show that prior to the date of the award to Victoria and also after that date there were surveyors and other persons who thought that within the outer boundaries of the land awarded to Victoria there were one or more pieces of land that were called Puunui and that some of these persons also believed that one or more of these lands of Puunui were parts of one or more of the lands of Puunui which were mentioned in the list of "Fort lands". Perhaps, also, some of that evidence tended to show that the land commission, without making a special investigation into the subject, prior to the date of the award to Victoria regarded some of the land within the boundaries of that later awarded to Victoria as being called Puunui and as being parts of one or more of the government Puunuis. But when, in 1854, the land commission, having before it for consideration the precise question of what lands should be awarded to Victoria and having heard from the government in opposition to the inclusion in the award of certain parts of the land (not the parts now in dispute), decided to award and did award to Victoria all of the land described by metes and bounds in L.C.A. 7712, apana 6, and when no appeal was taken from that decision or award as permitted by law, the award became final and conclusive and cannot now be set aside or modified.
Regarding the evidence in its aspects most favorable *Page 676 
to the Territory, it still remains possible that the land commission may have deliberately found as a fact (a) that the land now in dispute was not, under ancient Hawaiian customs and practice, an ili of Puunui or a lele of Puunui or a part of any ili or lele of Puunui, or (b) that while the land in dispute was known as an ili of Puunui, it was neither Puunui 1, nor Puunui 2, nor Puunui 3, but was Puunui 4 or Puunui 5 or Puunui 6 (the applicant's map shows the existence of a "Puunui of Queen Emma" which was evidently neither Puunui 1, nor Puunui 2, nor Puunui 3, and may well have been Puunui 4, and the witness Kahakai in his testimony before the land commission in 1851 spoke of the "Puunui of Nahalelauhala", which possibly was still another Puunui); or (c) the land commission may have deliberately included the land in dispute as a part of the land awarded to Victoria upon the express consent of the King or the government that it was not either Puunui 1 or Puunui 2 or Puunui 3, or upon the express consent of the King or government that the land be so awarded in spite of the fact that it was anciently a part of Puunui 1 or of Puunui 2 or of Puunui 3, the consent being induced by suitable arrangements made therefor by Victoria as by an agreement to desist from claiming certain other lands as a part of Kaakaukukui or as a part of other tracts maheled to her. The land commission in 1854 was in a much better position to ascertain the facts in these respects than this court or any other court can be at this day, seventy-four years after the surrender by the King of his title and the creation of titles in individuals. By diligent search counsel for the Territory has been enabled to present the few scattered bits of evidence which are claimed by him to show that the two pieces of land now in dispute were parts of Puunui 1 or of Puunui 2 or of Puunui 3, or of two of *Page 677 
them; but in 1854 there may well have been, and doubtless was, available a great deal more of testimony of well informed kamaainas, which would tend to throw light on that issue. Much of that evidence may have been in favor of the view adopted by the land commission that these two pieces were a part of the ili of Kaakaukukui and in equity should be awarded to Victoria Kamamalu. Those findings and that decision cannot at this late day be successfully attacked in this collateral proceeding. In the language of Chief Justice Lee (1851), in Kukiiahu v. Gill,1 Haw. 90, 91, reaffirmed by this court (1860) in Bishop v.Namakalaa, 2 Haw. 238, 240: "The land commission may have decided wrong, but if so," the losing parties "could have appealed to the supreme court agreeably to the statute in such case made and provided. In that court they could have shown fraud, want of title or anything else affecting the case; but it cannot be done here under the circumstances. If we are to go into these cases anew, treating the awards of the land commission and the supreme court as nothing then there is no security for any man's real estate — no rest for his title — and the whole Kingdom will be afloat." To the same effect are Keelikolani v.Robinson, 2 Haw. 522, 539, 551; Kalakaua v. Keaweamahi,4 Haw. 577; Kaai v. Mahuka, 5 Haw. 354, saying, "Every year which passes increases the force of the reason which demands that the adjudications of the land commission be not now re-examined";Estate of Kekauluohi, 6 Haw. 172, 178; and Atcherley v.Lewers Cooke, 18 Haw. 625, 634, 638.
One of the pieces of land claimed by the Territory lies along the eastern edge of the large tract awarded to Victoria. The "Puunui of Queen Emma", as located on the map of the applicant, also lies, generally speaking, along the eastern edge of the same larger tract. In delimiting the boundaries of the tract awarded to Victoria *Page 678 
the land commission was careful to exclude the "Puunui of Queen Emma", so stating its courses and distances as to leave it without the tract. On the question of construction of the award to Victoria it seems material to ask why the land commission, if it meant to exclude either or both of the pieces now claimed by the government, did not similarly draw and describe its lines so as to exclude these pieces, when it excluded what it found to be the "Puunui of Queen Emma" as not being a part of the ili of Kaakaukukui. It would have been as simple a matter for it to do the one as for it to do the other. This is true, even though the fact is that if it had excluded the larger piece now in dispute it could not have awarded the remainder of the ili of Kaakaukukui all in one contiguous tract, for the land commission often awarded lands in two or more apanas or parcels. In this very instance the award to Victoria was in a number of separate parcels which were not contiguous to each other.
Another contention of the Territory is that an issue should have been framed for submission to the jury as to whether Kekuanaoa obtained the award for Victoria through misrepresentation, concealment and fraud. The theory of the Territory is that Kekuanaoa, who was the governor of Oahu and at one time in charge of the Fort lands, knew that there was a lele of Puunui at Kakaako and knowingly concealed this knowledge from the land commission and that he held a fiduciary relation toward the government which made it his duty to disclose to the land commission all that he knew about this lele. There is not the slightest evidence in the record, however, as to what Governor Kekuanaoa said to the land commission or omitted to say. For aught that appears to the contrary he may have informed the land commission that there was a lele of a government Puunui within *Page 679 
Kaakaukukui and the commission may have disagreed with him, or he may have said to the commission that there were those who asserted that there was a lele of Puunui within Kaakaukukui but that his own belief was that there was no such lele there and the commission may have agreed with him or, believing that there was no such lele within Kaakaukukui, he may have remained silent on the subject. It is well settled that fraud is not to be presumed or found by mere surmise. The burden of proving it is upon the party alleging it.
There was no error in refusing to frame issues of fact for submission to the jury on appeal. The conclusion of the trial judge that the award of the land commission to Victoria Kamamalu included the land now in dispute and that it must now prevail in spite of all the evidence adduced by the Territory is correct.
The decree appealed from is affirmed.