85 P.3d 150

Alan Keith BREMER, Plaintiff–
Counterclaim Defendant–
Appellant/Cross–Appellee,

v.

John Douglas WEEKS II, also known as
Bobby Weeks, Defendant–Counterclaim-
ant–Appellee/Cross–Appellant,

and

Kamehameha Schools, formerly referred
to as Kamehameha Schools/Bernice P.
Bishop Estate, Doe, Defendant–Appellee,

and

John Does 2–100, Defendants.

No. 23812.

Supreme Court of Hawai'i.

Feb. 17, 2004.

Mark Van Pernis (of Van Pernis, Smith & Vancil), [withdrew eff. 8/10/03]; Gary W. Vancil and David E. Smith (current counsel of record), Kailua Kona, on the briefs, for Alan Keith Bremer.

Michael J. Matsukawa, on the briefs, for John Douglas Weeks II.

G. Richard Morry and Cheryl A. Nakamura (of Rush Moore Craven Sutton Morry & Beh), Honolulu, on the briefs, for Kamehameha Schools.

Carl C. Christensen, Honolulu, on the briefs, for amicus curiae Native Hawaiian Legal Corporation.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

This appeal arises out of plaintiff-counterclaim defendant-appellant/cross-appellee Alan Keith Bremer's [1] claim to a right of way under Hawai'i Revised Statutes (HRS) § 7–1 (1993) [2] over the makai [3] (westerly) portion of a trail parcel owned by defendant/counterclaimant-appellee/cross-appellant John Douglas Weeks, II (Defendant Weeks). Plaintiff appeals from the third circuit court's [4] (1) October 18, 1999 findings of fact (FOFs), conclusions of law (COLs), and order granting Defendant Weeks's motion for summary judgment on the complaint [hereinafter, the October 18, 1999 complaint order], (2) October 18, 1999 findings, conclusions, and order granting Defendant Weeks's motion for partial summary judgment on Counts II, III and V of the counterclaim [hereinafter, the October 18, 1999 counterclaim order], (3) February 28, 2000 order on Defendant Weeks's motion to assess nominal damages in Counts II and III of the counterclaim and for permanent injunction [hereinafter, the February 28, 2000 order], (4) February 28, 2000 judgment, and (5) October 3, 2000 final judgment. Defendant Weeks cross-appeals from the third circuit court's (1) October 18, 1999 counterclaim order, (2) December 15, 1999 order granting in part and denying in part Defendant Weeks's motion to tax attorney's fees and costs [hereinafter, the December 15, 1999 order], and (3) October 3, 2000 final judgment.

On appeal, Plaintiff essentially contends that the circuit court erred by: (1) finding that his claims were barred by res judicata; (2) finding that his kuleana [5] did not have a right of way under HRS § 7–1 over the makai portion of the trail parcel owned by Defendant Weeks; and (3) finding facts not supported or controverted by the record and

---

1. As more fully discussed *infra*, by order dated July 3, 2001, this court substituted Bremer for Christine Durbin, the original plaintiff-counterclaim-defendant-appellant/cross-appellee, and the caption of the case was changed. Throughout this opinion, we refer to the plaintiff-counterclaim-defendant-appellant/cross-appellee generally as "Plaintiff," except where the context requires a specific reference, in which case we use the precise surname, Durbin or Bremer, as applicable.

2. HRS § 7–1 states:
 **Building materials, water, etc.; landlords' titles subject to tenants' use.** Where the landlords have obtained, or may hereafter obtain, allodial [ (fee simple) ] titles to their lands, the people on each of their lands shall not be deprived of the right to take firewood, house-timber, aho cord, thatch, or ki leaf, from the land on which they live, for their own private use, but they shall not have a right to take such articles to sell for profit. *The people shall also have a right to* drinking water, and running

water, and *the right of way*. The springs of water, running water, and roads shall be free to all, on all lands granted in fee simple; provided that this shall not be applicable to wells and watercourses, which individuals have made for their own use.
 (Emphases added.)

3. "Makai" means "on the seaside, toward the sea, in the direction of the sea." Mary Kawena Pukui & Samuel H. Elbert, *Hawaiian Dictionary* 114 (Rev. ed.1986).

4. The Honorable Ronald Ibarra presided over the matters at issue on appeal.

5. "Kuleana" means "a small area of land such as were awarded in fee by the Hawaiian monarch, about the year 1850, to all Hawaiians who made application therefor." *Palama v. Sheehan*, 50 Haw. 298, 299 n. 1, 440 P.2d 95, 96 n. 1 (1968) (citation omitted).

drawing conclusions of law without factual basis in the record. On cross-appeal, Defendant Weeks contends that the circuit court erred by failing to award attorney's fees inasmuch as Plaintiff's complaint was frivolous.

Inasmuch as Plaintiff's first and second contentions have merit, we vacate the October 18, 1999 complaint order, the October 18, 1999 counterclaim order, the December 15, 1999 order, the February 28, 2000 order, the February 28, 2000 judgment, and the October 3, 2000 final judgment and remand the case for further proceedings. In light of our holding, it is unnecessary for us to address Plaintiff's third contention.

## I. BACKGROUND

### A. Factual History

#### 1. The kuleana and the subject trail

Plaintiff's kuleana [hereinafter, the kuleana] is described as Royal Patent Grant 6367, Land Commission Award 7361, Apana 3 to Kapuipui, located in Keauhou 1st, North Kona, County and State of Hawai'i. The kuleana bears the Tax Map Key designation (3)7–8–06:15. The land surrounding the kuleana is part of Royal Patent Grant 4475, Land Commission Award 7713, Apana 7 to Victoria Kamamalu. According to a 1961 survey map, the land to the immediate south and east (mauka [6]) of the kuleana was, as of 1961, owned by Virginia Haanio, and the land to the immediate north and west (makai) of the kuleana, consisting in relevant part of a trail running along the entire northerly side of the kuleana [hereinafter, the subject trail], was, as of 1961, owned by Doe defendant-appellee Kamehameha Schools, formerly referred to as Kamehameha Schools/Bernice Pauahi Bishop Estate (Defendant Bishop Estate). The subject trail runs in an east-west (mauka-makai) direction between (1) a private road to the east (just beyond the Haanio's property immediately east of the kuleana), owned by Defendant Bishop Estate and commonly known as the "Old Poi Factory Road" [hereinafter, the Old Poi Factory Road [7]], and (2) Mamalahoa Highway to the west (beyond Defendant Bishop Estate's property immediately west of the kuleana). It is apparent from the record that the only established means of access to and from the kuleana is via the subject trail, either from Mamalahoa Highway (over the makai portion of the subject trail to the kuleana) or from the Old Poi Factory Road (over the mauka portion of the subject trail to the kuleana).

In October 1981, Defendant Bishop Estate granted to Christopher and Robertline Kratt (the then-owners of the kuleana) a "non-exclusive temporary roadway easement" over the makai portion of the subject trail from Mamalahoa Highway to the kuleana. The October 8, 1981 letter agreement between the Trustees of Defendant Bishop Estate (the Trustees) and the Kratts provided, inter alia, that the term of the "easement" grant would commence on "November 1, 1981 for a period of one year and continuing thereafter, subject to termination by either party of not less than ninety (90) days' prior written notice."

By deed dated April 12, 1983, the Kratts conveyed the kuleana to Frank and Schellie Uddo (the Uddos) who, in turn, conveyed the kuleana to Fred Squire by deed dated October 6, 1983. On November 8, 1984, the Trustees conveyed the subject trail by quitclaim deed to Defendant Weeks's parents, John Weeks, Sr. (Weeks Sr.) and Helen Weeks [hereinafter, collectively, the Weekses], subject to the 1981 agreement with the Kratts. A metes and bounds description of the subject trail is included in the quitclaim deed. The Tax Map Key parcel number for the land on which the subject trail is located is TMK 7–8–06:63.

#### 2. The 1985 Agreements and 1987 Stipulation

In July 1985, Squire, the then-owner of the kuleana, asked the Trustees for a roadway easement over the Old Poi Factory Road. By letter agreement dated July 30, 1985 [herein-

---

**6.** "Mauka" means "inland." Pukui & Elbert, *Hawaiian Dictionary* at 242.

**7.** The record also refers to the Old Poi Factory Road as the Kamehameha Schools/Bishop Estate roadway. For purposes of this opinion we refer to this private road as the Old Poi Factory Road.

after, the July 30, 1985 letter agreement], the Trustees granted Squire a "non-exclusive roadway easement over and across [the Old Poi Factory Road] presently serving our tenants of the Keauhou mauka subdivision in North Kona, Hawai'i." As described in the July 30, 1985 letter agreement, the Old Poi Factory Road "emanates from Mamalahoa Highway and meanders easterly then northerly to a point where it meets the John Weeks roadway [ (to wit, the subject trail) ]." The July 30, 1985 letter agreement stated that the "easement" grant was subject to the following relevant terms and conditions:

1. *Term*—Commencing August 1, 1985 for a period of one year and continuing thereafter, subject to termination by either party on not less than ninety (90) days' prior written notice.

2. *Consideration*—You shall pay a nonrefundable fee of $50 upon acceptance of this offer to cover administrative expenses.

. . . .

6. *Assignment*—You shall not without written consent from the trustees, assign or otherwise transfer any interest in this easement, and this easement will be assignable only together with the parcel which it serves.

. . . .

9. This grant of easement automatically cancels the previous easement to Mr. and Mrs. Christopher Kratt dated October 8, 1981.

The July 30, 1985 letter agreement also indicated that Squire should "approach [Weeks Sr.] for an easement for the short portion of the roadway between [the Old Poi Factory Road] and your lot."

By letter agreement dated July 31, 1985 [hereinafter, the July 31, 1985 letter agreement, and, together with the July 30, 1985 letter agreement, the 1985 Agreements], Weeks Sr. granted Squire a "non-exclusive roadway easement over and across a portion of the John D. Weeks Roadway [i.e., the subject trail] from [the Old Poi Factory

Road] to a point opposite the existing house on [the kuleana]. . . ." The "easement" grant was subject to substantially similar terms as the July 30, 1985 letter agreement with the Trustees, including, *inter alia*, the following:

1. *Term*—Commencing August 1, 1985 for a period of one year and continuing thereafter, subject to termination by either party on not less than ninety (90) days' prior written notice.

2. *Consideration*—You shall pay a nonrefundable fee of $25.00 upon acceptance of this offer to cover administrative expenses.

. . . .

6. *Assignment*—You shall not without written consent from [Weeks Sr.] or his assigns, assign or otherwise transfer any interest in this easement, and this easement will be assignable only together with the parcel which it serves.

. . . .

9. This grant of easement automatically cancels [Weeks Sr.] or his assigns, obligation to recognize the previous easement to Mr. and Mrs. Christopher Kratt, dated October 8, 1981 from the Trustees. . . .

On August 27, 1985, Squire executed a warranty deed, conveying the kuleana, together with his rights under the 1985 Agreements, to William Stromberg. At some point thereafter, Stromberg instituted an action in the third circuit court to quiet title to the kuleana [hereinafter, the quiet title action]. The record includes the following three documents from the quiet title action: (1) a "Stipulation Establishing Boundary Lines and Confirming Access," dated November 19, 1987 (and filed January 18, 1988), by and between Stromberg, the Weekses, Robert Hickcox, and Thomas Hickcox,[8] [hereinafter, the 1987 Stipulation]; (2) the circuit court's August 13, 1993 order granting an ex parte motion to substitute the Uddos as plaintiffs in the quiet title action; and (3) the circuit court's October 19, 1993 FOFs, COLs, and order granting motion for summary judg-

8. The record evinces that Robert Hickcox and Thomas Hickcox were successors in interest to

Haanio.

ment and judgment quieting title [hereinafter, the 1993 summary judgment order in the quiet title action].

The 1987 Stipulation states in relevant part:

*The purpose of this stipulation is to acknowledge the existing boundary lines between the parcels of land owned by Stromberg, John and Helen Weeks, Robert Hickcox and Thomas Hickcox at Keauhou, North Kona, County and State of Hawai'i.*

[Stromberg] claims ownership to a parcel of land described as L.C. Aw. 7361, Apana 3 [ (the kuleana) ] described on the Complaint and present tax map as Parcel (3) 7–8–06–15. [The] Weeks are the owners of a parcel of land described on the present tax map as Parcel (3) 7–8–06–12 (which parcel contains portions of L.C. Aw. 11047, Apana 1 and said Lots 10B and 10C lying on the northerly and southerly side of said L.C. Aw. 11047, Apana 1). [The] Weeks are also the owners of that certain roadway, being a portion of L.C. Aw. 7713, Apana 7 consisting of a trail 15 feet wide, more or less, and adjoining Lots 8A, 8B, 9, 10A, 10B, L.C. Aw. 7361, Apana, 3 as delineated on Bishop Estate Map 8906. . . .

. . . .

*As between [Stromberg] and [the] Weeks, [Stromberg] and [the] Weeks acknowledge that the agreement entered into by· and between [Squire] and [Weeks Sr.] dated July 31, 1985, . . . continues to exist according to its terms, particularly that portion which establishes access to Parcel (3) 7–8–06–15 [ (the kuleana) ] from [the Old Poi Factory Road] over a portion of the above-referenced trail.*

(Emphases added.) In the last paragraph of the 1987 Stipulation, the Weekses, Robert Hickcox, and Thomas Hickcox, "being owners of land adjoining to and not having a claim of ownership in and to [the kuleana]," disclaim any interest in and to the kuleana.

As for the August 13, 1993 order regarding substitution of parties in the quiet title action, the record reveals that the kuleana was transferred to the United States Government pursuant to a January 26, 1993 final judgment and decree of forfeiture in *United States v. Real Property Titled in the Name of Stromberg,* Civ. No. 88–00310 HMF, in the United States District Court for the District of Hawai'i. By quitclaim deed dated April 5, 1993, the United States Government transferred the kuleana to the Uddos. By order dated August 13, 1993, the circuit court substituted the Uddos as plaintiffs·in the quiet title action.

Pursuant to the 1993 summary judgment order in the quiet title action, fee simple title to the kuleana was "quieted and vested in Plaintiffs FRANK UDDO and SCHELLIE UDDO equally as husband and wife[.]" With respect to the 1987 Stipulation, FOF 6 of the 1993 summary judgment order in the quiet title action states:

By STIPULATION ESTABLISHING BOUNDARY LINES AND CONFIRMING ACCESS filed herein, John D. Weeks and Helen W. Weeks, and Robert P. Hickcox and Thomas J. Hickcox disclaimed any interest in the subject property as the property was described in that Stipulation.

The 1993 summary judgment order in the quiet title action also incorporated a survey map that Weeks Sr., a licensed surveyor, had prepared respecting the kuleana, the subject trail, and other surrounding properties.

On July 17, 1997, the Uddos executed a warranty deed, conveying the kuleana to Durbin.

### B. *Procedural History*

On September 10, 1998, Durbin filed a complaint against Defendant Weeks and · John Does 1–100, claiming a right of way to and from the kuleana over the makai portion of the subject trail. Plaintiff asserted, *inter alia,* that the "[h]istorical, present, legal and actual access to [the kuleana] from a public and government highway [i.e., Mamalahoa Highway] is by way of [the subject trail]" and that she was also entitled to a right of way over the subject trail based upon necessity. Plaintiff prayed in relevant part for declaratory relief to this effect and a preliminary and permanent injunction enjoining Defendant Weeks from, *inter alia,* interfering with her access to the subject trail.

Defendant Weeks answered, *inter alia*, that he "owns . . . such real property [that] is a part of the dispute herein[,]" to wit, the subject trail. Defendant Weeks also filed a counterclaim, alleging that his and Plaintiff's "respective predecessors in interest had entered into certain agreements in the past [ (i.e., the 1985 Agreements) ] and, further a stipulation [ (i.e., the 1987 Stipulation in the quiet title action) ], which specifically addresses the rights and duties of the parties herein." Defendant Weeks sought, *inter alia*, (1) specific performance of those agreements and the 1987 Stipulation (Count I), (2) an injunction "restrain[ing] Plaintiff or persons claiming by or under Plaintiff from interfering with and trespassing upon [his] property or any portion thereof[ ]" (Count II), (3) trespass (Count III), and (4) an alternative claim for breach of contract (Count IV). Defendant Weeks also alleged that Plaintiff's complaint was frivolous (Count V).

On November 10, 1998, Plaintiff moved for a temporary restraining order and a preliminary injunction [hereinafter, Plaintiff's TRO motion], requesting that Defendant Weeks be restrained and enjoined from interfering with her access to the subject trail and harassing or threatening her "concerning the use of [the subject trail] by [her], her invitees, permitees, or guests for pedestrian, vehicular or utilities access to her [kuleana]." Plaintiff claimed, *inter alia*, that access to her property "requires and includes the use of [the subject trail]," and "without that access[,] the property is landlocked." Plaintiff argued that, pursuant to HRS § 7–1, "a kuleana cannot be landlocked and it must always be afforded a right-of-way easement for ingress and egress."

## C. *Hearing on Plaintiff's TRO Motion*

Plaintiff's TRO motion came on for hearing on November 30, 1998. At the hearing, the parties stipulated to the fact that Plaintiff's property is a kuleana and that the kuleana had been serviced by the subject trail as follows:

[T]here is a trail which is 15 feet wide as surveyed which in the past—and there's a question as when in the past—serviced the [kuleana] from . . . Mamalahoa Highway

on its makai side to a Bishop Estate road [ (i.e., Old Poi Factory Road) ] on its mauka side.

Plaintiff recognized that, subsequent to the 1985 Agreements and the 1987 Stipulation, her predecessors in interest accessed the kuleana via the Old Poi Factory Road and a mauka portion of the subject trail. Plaintiff argued, however, that she did not have unimpeded, unencumbered access to the kuleana inasmuch as the 1985 Agreements were conditional. Regardless, because the agreements had expired, Plaintiff maintained that she should not be bound by them. As for the 1987 Stipulation, Plaintiff asserted that it was nothing more than a disclaimer to the kuleana made by Weeks Sr. and other adjoining property owners. Moreover, the FOFs set forth in the 1993 summary judgment order in the quiet title action reflect that the circuit court determined simply that a disclaimer to the kuleana was made by the 1987 Stipulation.

On December 21, 1998, the circuit court denied Plaintiff's TRO motion, concluding, *inter alia*, that the 1985 Agreements "fixed the right of way to the kuleana as of 1985[.]" Finding that the 1985 Agreements "are still valid and enforceable," the circuit court pointed out that "there is no evidence that [Defendant] Weeks or the Trustees have cancelled or threatened to extinguish the right-of-way fixed by the 1985 . . . [A]greements." The circuit court stated that, regardless, it could not "adjudicate the Trustees' interest herein without their presence[,] and Plaintiff did not join the Trustees in this action." The circuit court agreed, however, with Defendant Weeks that the 1987 Stipulation "reaffirmed the 1985 . . . [A]greements and the right-of-way established thereunder[.]" Based on principles of res judicata, the circuit court ruled that Plaintiff "is barred from denying the terms of the Stipulation or their operative effect."

On January 4, 1999, upon Plaintiff's motion, the circuit court approved Plaintiff's identification of unidentified John Doe 1 Kamehameha Schools/Bernice Pauahi Bishop Estate (to wit, Defendant Bishop Estate). On February 10, 1999, Defendant Bishop Estate answered, *inter alia*, that Plaintiff "is

barred from obtaining relief against [Defendant Bishop Estate] on grounds of res judicata and/or collateral estoppel." However, in its April 6, 1999 response to Plaintiff's first request for admissions, Defendant Bishop Estate admitted in pertinent part that "[t]he Bishop Estate at this time has no written or oral agreements with Christine Durbin to allow her unconditional and permanent access across land owned by The Bishop Estate for the purpose of access to [the kuleana]."

On July 8, 1999, Defendant Weeks moved for summary judgment on the complaint and for partial summary judgment on Counts II, III and V of the counterclaim. Following a September 1, 1999 hearing on the matters, the circuit court (1) granted Defendant Weeks's motion for summary judgment on the complaint pursuant to the October 18, 1999 complaint order [9] and (2) granted Defendant Weeks's motion for partial summary judgment on Counts II, III and V of the counterclaim pursuant to the October 18, 1999 counterclaim order.[10] However, it is apparent from the COLs in the October 18,

1999 counterclaim order that Defendant Weeks's motion for summary judgment with respect to Count V was neither granted or denied.

On November 15, 1999, Defendant Weeks withdrew Counts I and IV of the counterclaim pursuant to an October 22, 1999 stipulated order. On November 24, 1999, Defendant Weeks moved for attorney's fees and costs, pursuant to HRS § 607–14.5 (Supp. 1999),[11] asserting that Plaintiff's complaint was frivolous. That same day, Defendant Weeks moved separately to assess nominal damages in Counts II and III of the counterclaim and to permanently enjoin Plaintiff from using any portion of the subject trail.

In its December 15, 1999 order, the circuit court granted Defendant Weeks costs in the amount of $710.86 but denied his request for attorney's fees.[12] In its February 28, 2000 order, the circuit court granted Defendant Weeks one dollar ($1.00) in nominal damages as to Count III of the counterclaim and, as to Count II, enjoined Plaintiff from using any

9. The October 18, 1999 complaint order directs in pertinent part that:

> Based upon the foregoing findings of fact and conclusions of law,
> A. Plaintiff's Complaint is dismissed with prejudice and judgment shall enter thereon against Plaintiff and in favor of Defendant Weeks;
> B. No affirmative claim for relief having been advanced against the Trustees under the Complaint, judgment shall also enter thereon against Plaintiff and in favor of the Trustees[.]

10. The October 18, 1999 counterclaim order states that "Defendant Weeks Motion for Partial Summary Judgment on Counts II, III and V of his Counterclaim be and the same is hereby granted."

11. HRS § 607–14.5 provides:

> Attorneys' fees and costs in civil actions.
> (a) In any civil action in this State where a party seeks money damages or injunctive relief, or both, against another party, and the case is subsequently decided, the court may, as it deems just, assess against either party, whether or not the party was a prevailing party, and enter as part of its order, for which execution may issue, a reasonable sum for attorneys' fees and costs, in an amount to be determined by the court upon a specific finding that all or a portion of the party's claim or defense was frivolous as provided in subsection (b).

> (b) In determining the award of attorneys' fees and costs and the amounts to be awarded, the court must find in writing that all or a portion of the claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action. In determining whether claims or defenses are frivolous, the court may consider whether the party alleging that the claims or defenses are frivolous had submitted to the party asserting the claims or defenses a request for their withdrawal as provided in subsection (c). If the court determines that only a portion of the claims or defenses made by the party are frivolous, the court shall determine a reasonable sum for attorneys' fees and costs in relation to the frivolous claims or defenses.

> (c) A party alleging that claims or defenses are frivolous may submit to the party asserting the claims or defenses a request for withdrawal of the frivolous claims or defenses, in writing, identifying those claims or defenses and the reasons they are believed to be frivolous. If the party withdraws the frivolous claims or defenses within a reasonable length of time, the court shall not award attorneys' fees and costs based on those claims or defenses under this section.

12. Under its October 3, 2000 final judgment, the circuit court dismissed Count V of the counterclaim based on the December 15, 1999 order denying attorney's fees and entered judgment in favor of Plaintiff on this count.

portion of the subject trail except for the mauka portion described in the 1985 Agreements. The circuit court also entered its February 28, 2000 judgment. On October 3, 2000, the circuit court entered final judgment. This timely appeal and cross-appeal followed.

## II. *STANDARDS OF REVIEW*

### A. *Summary Judgment*

 This court reviews a circuit court's grant or denial of summary judgment *de novo. Hawai'i Cmty. Fed. Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is well settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations, internal quotation marks, and some brackets omitted).

13. HRAP Rule 43(a) and (b) state in pertinent part:

> (a) **Death of a Party.** If a party dies after the notice of appeal is filed, or while the proceeding is otherwise pending in a Hawai'i appellate court, that court may substitute the personal representative of the deceased party as a party on motion filed by the representative or by any party with the appellate clerk. The motion of a party shall be served upon the representative in accordance with the provisions of Rule 25. If the deceased party has no representative, any party may suggest the death on the record, and proceedings shall then be had as that court shall direct. If a party against whom an appeal may be taken dies after entry of the judgment or order in the court or agency appealed from but before a notice of appeal is filed, an appellant may proceed as if the death had not occurred. Af-

### B. *FOFs and COLs*

 this court reviews the trial court's findings of fact under the clearly erroneous standard. *Beneficial Hawai'i, Inc. v. Kida*, 96 Hawai'i 289, 305, 30 P.3d 895, 911 (2001).

> A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. A finding of fact is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*Id.* (internal citations, quotations marks, brackets, and block quotation format omitted). Conclusions of law are reviewed de novo. *Id.*

*Association of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd.*, 100 Hawai'i 97, 112, 58 P.3d 608, 623 (2002).

## III. *DISCUSSION*

### A. *Jurisdiction*

On June 6, 2001, Durbin moved this court to substitute Bremer as plaintiff-appellant/cross-appellee pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rules 43(a) and (b) (2000).[13] Defendant Weeks opposed substitution and moved to dismiss the appeal

ter the notice of appeal is filed, substitution shall be effected in the Hawai'i appellate courts in accordance with this subsection. If a party entitled to appeal shall die before filing a notice of appeal, the notice of appeal may be filed by the party's personal representative, or, if the party has no representative, by the party's attorney of record within the time prescribed by these rules. After the notice of appeal is filed substitution shall be effected in the Hawai'i appellate courts in accordance with this subsection.

(b) **Substitution for Other Causes.** If substitution of a party in the Hawai'i appellate courts is necessary for any reason other than death, substitution shall be effected in accordance with the procedure prescribed in subsection (a).

(Bold emphases in original.)

on the ground that Durbin no longer had any interest in the kuleana.

In an order dated July 3, 2001, this court stated:

> (1) this appeal involves the right of access to a kuleana that was owned by Christine Durbin and sold to Alan Keith Bremer; and (2) in his affidavit, Alan Keith Bremer stated that he purchased the property with the knowledge of the ongoing litigation related to the right of access to the property and wishes to substitute as the plaintiff-appellant and continue the litigation....

Accordingly, this court granted Durbin's motion to substitute Bremer as the original plaintiff-appellant/cross-appellee, ordering that the caption of the case list Bremer as plaintiff-appellant/cross-appellee. This court also denied Defendant Weeks's motion to dismiss the appeal.

In his counterstatement of the questions presented, Defendant Weeks queries whether this court has jurisdiction over Bremer's appeal. His entire argument on this point reads:

> I. *NO APPELLATE JURISDICTION*
>
> On June 12, 2001, Appellee Weeks moved to dismiss Appellant [Durbin]'s appeal on the grounds that her statutory declaratory judgment action and appeal abated when she sold her property to a third party. Abatement is a matter of substantive law and not a matter of justiciability (mootness).

Although unclear from his brief, Defendant Weeks's jurisdictional challenge effectively amounts to a request that this court reconsider its July 3, 2001 order granting Durbin's motion to substitute Bremer as the plaintiff-appellant and denying his motion to dismiss the appeal. Not only is Defendant Weeks's request untimely, but his argument lacks merit. Defendant Weeks fails to present any authority to support his contention that Bremer cannot properly be substituted for Durbin. The issues raised on appeal relate exclusively to the use of the subject trail leading to the kuleana, which is now owned by Bremer. In other words, the issues raised on appeal relate to the land and not to Durbin, as an individual. Moreover, if, as Defendant Weeks contends, Durbin's personal right to continue the action expired upon a sale of the kuleana, substitution of Bremer, as the present owner of the kuleana, is "necessary" pursuant to HRAP Rule 43(b). We, therefore, turn to the merits of Plaintiff's appeal.

## B. *Res Judicata*

Plaintiff contends the circuit court erred in concluding that his claims were barred by the res judicata effect of the quiet title action and, in particular, the 1987 Stipulation. Bremer takes issue with the following relevant COLs set forth in the October 18, 1999 complaint order on the issue of res judicata:

> 11. The intentions of the parties to the 1985 [Agreements] and 1987 Stipulation are unambiguously set forth on the face of the documents and nothing indicates that the contracting parties intended the 1985 [Agreements] or 1987 Stipulation to provide only for a "secondary" right-of-way to supplement the so-called "main" right-of-way, reserving all rights to a "main" right-of-way that is undefined and unlocated therein.
>
> *Res Judicata*
>
> 12. At the heart of the current dispute is Plaintiff's attempt to relitigate the kuleana's right-of-way over the trail parcel *after* the opportunity therefor first arose in [the quiet title action].
>
> 13. Plaintiff's predecessors Stromberg and Uddo elected not to obtain that adjudication in 1987–1993 and, instead, entered into the 1987 Stipulation with Defendant Weeks' parents, who then owned the fee title to the trail parcel.
>
> 14. The judicial policy of res judicata is one of long-standing and great importance. *Morneau v. Stark Enterprises, Ltd.*, 56 Haw. 420, 422–33 [–23] [539 P.2d 472] (1975):
>
> > We quoted in *Ellis v. Crockett*, 51 Haw. 45, 55, 451 P.2d 814, 822 (1969), from a previous opinion of this court in *In re Bishop Estate*, 36 Haw. 403, 416 (1943), on the effect of res judicata as follows:
> >
> > > "[t]he judgment of a court of competent jurisdiction is a bar to a new action

in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided."

15. It is obvious from the arguments, the evidence offered and the policy statements advanced in this action that those arguments, evidence and statements should have been raised 12 years ago when Plaintiff's predecessors Stromberg and Uddo prosecuted [the quiet title action] (and while Defendant Weeks' parents were alive and some of the Plaintiff's predecessors and other knowledgeable individuals were available).

16. The application of res judicata (merger doctrine) against Plaintiff and enforcement of the 1985 [Agreements] and 1987 Stipulation against Plaintiff will not violate public policy but will advance public policy.

17. Since 1993, no one has applied to vacate the 1987 Stipulation or Judgment in [the quiet title action].

(Emphasis in original.)

Plaintiff also challenges the following relevant COLs set forth in the October 18, 1999 counterclaim order relating to res judicata:

1. Plaintiff is precluded from litigating a claim to establish a right-of-way over the trail parcel directly makai to Mamalahoa Highway, a claim that her predecessors Stromberg and Uddo could have but elected not to pursue between 1987 and 1993 in [the quiet title action].

2. Such preclusion will not result in Plaintiff being "landlocked" since Plaintiff continues to actually use the mauka portion of the trail parcel pursuant to the 1985 [Agreements] and the 1987 Stipulation for access over the trail parcel to the Trustees' road reserve and to the [O]ld Poi Factory [R]oad.

3. The application of res judicata (merger doctrine) against Plaintiff does not violate public policy. *Morneau v. Stark Enterprises, Ltd.,* 56 Haw. 420, 423 [539 P.2d 472] (1975).

4. Nor does the enforcement of the 1985 [Agreements] and 1987 Stipulation violate public policy governing the voluntary conveyancing of real property interests. *See Oahu Railroad [Railway] and Land Co. v. Armstrong,* 18 Haw. 258, 260–61 (1907) (owner of two or more appurtenant rights effectively conveyed only the right which the owner actually used at time of conveyance under habendum clause for appurtenances "held or enjoyed therewith"); *Reppun v. Board of Water Supply,* 65 Haw. 531, 551–52 [656 P.2d 57] (1982) (purchaser of kuleana does not acquire appurtenant rights withheld from conveyance by owner-seller).

■ Res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, are doctrines that limit a litigant to one opportunity to litigate aspects of the case to prevent inconsistent results and multiplicity of suits and to promote finality and judicial economy.[14] *Dorrance v. Lee,* 90 Hawai'i 143, 148–49, 976 P.2d 904, 909–10 (1999). Claim preclusion and issue preclusion are, however, separate doctrines that "involve[ ] distinct questions of law." *Id.* at 148, 976 P.2d at 909.

■ Claim preclusion, which the circuit court relied upon below, "prohibits a party from relitigating a previously adjudicated cause of action." *Id.* Moreover,

[t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, *but also of all* ***grounds of claim*** *and defense which might have been* ***properly*** *litigated in the first action but were not litigated or decided.*

**14.** In previous decisions, this court has used the term res judicata to refer to preclusion, in general, and claim preclusion, specifically. To avoid confusion resulting from the two uses of the term res judicata, this opinion will hereinafter use the term "claim preclusion" instead of res judicata and "issue preclusion" instead of collateral estoppel.

*Foytik v. Chandler,* 88 Hawai'i 307, 314, 966 P.2d 619, 626 (1998) (quoting *Morneau v. Stark Enters., Ltd.,* 56 Haw. 420, 422–23, 539 P.2d 472, 474–75 (1975)) (emphases added). The party asserting claim preclusion has the burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim decided in the original suit is identical with the one presented in the action in question.

Issue preclusion "applies to a subsequent suit between the parties or their privies on a *different* cause of action and prevents the parties or their privies from relitigating *any issue* that was actually litigated and finally decided in the earlier action." *Dorrance,* 90 Hawai'i at 148, 976 P.2d at 910 (emphases in original). The party asserting issue preclusion must establish that:

> (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom [issue preclusion] is asserted was a party or in privity with a party to the prior adjudication.

*Id.* at 149, 976 P.2d at 911. As to the fourth requirement, it is not necessary that the party asserting issue preclusion in the second suit was a party in the first suit. *Morneau,* 56 Haw. at 425, 539 P.2d at 476.

As reflected in its COLs, the circuit court concluded that Plaintiff's predecessors (i.e., Stromberg and the Uddos) could have, but chose not to, adjudicate a claim of a right of way over the makai portion of the subject trail to Mamalahoa Highway at the time they prosecuted the quiet title action. Based on principles of claim preclusion, the circuit court reasoned that the 1985 Agreements, the judgment in the quiet title action, and the 1987 Stipulation in particular, operated as a bar to Plaintiff's claim of a right-of-way over the makai portion of the subject trail to Mamalahoa Highway. Arguing that claim preclusion does not apply, Plaintiff states, and amicus curiae Native Hawaiian Legal Corporation concurs:

> In that 1987 case there was no reference to or adjudication of the title to the access nor of the title to the land underneath the access. There was no adjudication of anything other than the title to the kuleana, TMK (3) 7–8–06:15, in that 1987 case. The access way at issue in this case at bar is land different and separate from the kuleana which was involved in the 1987 case....

We agree with Plaintiff and amicus curiae. We first point out that we do not have a full evidentiary record from the quiet title action. As previously indicated, the only documents from the quiet title action that are included in the record on appeal are the 1987 Stipulation, the circuit court's August 13, 1993 order granting an ex parte motion to substitute the Uddos as plaintiffs in the quiet title action, and the 1993 summary judgment order in the quiet title action. Therefore, based on the record before us and the facts of the instant case, we hold that the right of access over the *makai* portion of the subject trail to the kuleana is not a claim which might have been properly litigated in the quiet title action.

In *Stickle v. Link,* 511 S.W.2d 848 (Mo. 1974), the plaintiff/servient estate owner sued the defendant/dominant estate owner to restrict the defendant's use of the road for residential and agricultural purposes. The defendant asserted that a prior judgment dismissing a suit against her predecessor in interest to enjoin use of the roadway for residential and agricultural purposes gave her, based on principles of claim preclusion, an unrestricted right to use the roadway for commercial and business as well as residential and agricultural purposes. *Id.* at 852–53.

The Missouri Supreme Court disagreed with the defendant, pointing out that, whereas the issue before the trial court in the prior action was use of the roadway by the defendant therein for residential and agricultural purposes, the issue in *Stickle* "relates to an expansion of such right." 511 S.W.2d at 855. The *Stickle* court held that, inasmuch as the case before them involved different facts from the prior case, "[t]here is no reason to bar this action on the grounds that [the plaintiff therein] should have foreseen a possible use such as [the defendant] now proposes to make of the road and that [the plaintiff

therein] should have presented such issue in the earlier case." *Id.* at 855–56. In other words, claim preclusion does not apply because the causes of action are not the same. *See id.*

As in *Stickle*, the case before us involves different facts from the prior case. It is apparent from the documents before us from the quiet title action that the fundamental issue involved in that case was the title, interest, and estate of whatever nature of the parties in and to the kuleana. With respect to the 1987 Stipulation, its sole purpose, as stated in the introductory paragraph thereof, "is to acknowledge the existing *boundary lines* between the parcels of land owned by Stromberg, John and Helen Weeks, Robert Hickcox, and Thomas Hickcox." (Emphasis added.) As between Stromberg and the Weekses, those parties merely confirmed in the 1987 Stipulation that the July 31, 1985 letter agreement "continues to exist according to its terms, particularly that portion which establishes access to [the kuleana] from [the Old Poi Factory Road] over a portion of the [subject] trail." Indeed, as previously noted, the 1987 Stipulation is titled "Stipulation Establishing Boundary Lines and *Confirming Access*." (Emphasis added.)

The record before us reflects that, other than the sentence in the 1987 Stipulation confirming access to the kuleana from the Old Poi Factory Road over a portion of the subject trail, there was no other evidence before the circuit court in the prior case regarding access rights to the kuleana. Moreover, inasmuch as Plaintiff's right of access to the kuleana over the mauka portion of the subject trail is dependant upon use of the Old Poi Factory Road, it is significant to note that Defendant Bishop Estate, the owner of the Old Poi Factory Road, was not a party to the 1987 Stipulation. Further, as previously indicated, the 1993 summary judgment order in the quiet title action makes only a single reference to the 1987 Stipulation, stating simply that, pursuant to the stipulation, the Weekses, Robert Hickcox, and Thomas Hickcox disclaim any interest in

the kuleana as the kuleana is described in the stipulation.

In light of the fact that, at the time of the quiet title action, there was no dispute regarding access to the kuleana, we, like the court in *Stickle*, see no reason that Plaintiff's predecessors should have foreseen the need to claim a right of access over the makai portion of the subject trail or any other possible rights of access to the kuleana and should have presented such claims in the quiet title action. Under these facts and circumstances, a claim of a right of access over the makai portion of the subject trail or any other rights of access were not claims that might have been properly litigated in the quiet title action. Those claims clearly would not have supported the claim of title to the kuleana itself which was the subject of the quiet title action.

Thus, the 1993 summary judgment order in the quiet title action and, in particular, the 1987 Stipulation, did not adjudicate, either expressly or impliedly, the rights of access of Plaintiff's predecessors in interest to the kuleana. Accordingly, we hold that the 1993 summary judgment order in the quiet title action and, in particular, the 1987 Stipulation, do not preclude the instant suit. As for the preclusive effect of the 1985 Agreements, those agreements are not a "previously adjudicated cause of action," *Dorrance*, 90 Hawai'i at 148, 976 P.2d at 910, nor were they entered into in connection with any "previously adjudicated cause of action." Principles of claim preclusion are, therefore, inapplicable.[15]

### C. *Right of Way under HRS § 7–1*

Notwithstanding its conclusion in COL 1 of the October 18, 1999 counterclaim order that the 1985 Agreements, the 1993 summary judgment order in the quiet title action, and the 1987 Stipulation "precluded [Plaintiff] from litigating a claim to establish a right-of-way over the trail parcel directly makai to Mamalahoa Highway," the circuit court nonetheless addressed the merits of Plaintiff's suit. Ultimately, the circuit court concluded that Plaintiff had essentially failed to prove

---

**15.** However, we discuss, *infra*, Section III.C.4.b, the effect of the 1985 Agreements vis-a-vis Plain-

tiff's claim of right of way under HRS § 7–1 based on necessity.

she was entitled to a right of way over the makai portion of the subject trail based upon ancient or historical use under HRS § 7–1. The circuit court also determined that it would not address Plaintiff's claim of right of way under HRS § 7–1 based upon necessity, inasmuch as it was not yet "ripe" for consideration. We disagree with the circuit court on both points.

### 1. Defendant's ownership of the subject trail

As an initial matter, however, we address Plaintiff's contention that the circuit court "erred because it could not summarily adjudge the ownership of the title to that land where the kuleana's access was located." Plaintiff states that

> [i]t is represented in the Complaint Order, but without support in the record, that [Defendant Weeks] proved a claim of title to the trail parcel, TMK (3)7–8–6:63, in the Court below and/or that the prior quiet title case, Civil No. 87–486K, had adjudicated title to the trail parcel in [Defendant Weeks]'s predecessors such that res judicata applied.

Plaintiff continues,

> the record does not support that unplead [sic] claim, nor that [Plaintiff] had any notice of or opportunity to respond to such claim. Thus the Complaint Order and Counterclaim Order must be reversed.... The claim by [Defendant Weeks] to ownership of the access was not pled nor was [Plaintiff] provided with an opportunity to contest such a claim nor to plead in response that the ownership of the trail was subject to kuleana access rights. Thus, as a matter of law, the Court below could not find, conclude and adjudicate that [Defendant Weeks] was the exclusive owner of

the trail parcel, TMK (3) 7–8–6:63, exclusive of kuleana access rights.

Plaintiff's argument is flawed. First, Plaintiff's assertion that he essentially had no notice of Defendant Weeks's claim of ownership of the subject trail patently lacks merit. Plaintiff alleged in the complaint that Defendant Weeks claimed to own an interest in the subject trail. In his answer and counterclaim, Defendant Weeks specifically alleged that he owned the subject trail. In fact, Defendant Weeks's claim of ownership of the subject trail serves as the basis of his trespass claim in Count III of the counterclaim.

Second, Plaintiff erroneously states that the circuit court "determine[d] and quiet[ed] title to the trail parcel in [Defendant Weeks's] name[.]" The circuit court concluded in COL 2 of the October 18, 1999 complaint order that, "*[a]s between Plaintiff and Defendant Weeks*, Defendant Weeks owns the legal title to the trail parcel." (Emphasis added.) This conclusion does not have the effect of quieting title to the subject trail in Defendant Weeks, but is clearly limited to the issue of ownership of the subject parcel only "[a]s between Plaintiff and Defendant Weeks." In other words, with the exception of Plaintiff, the circuit court does not adjudicate title to the subject trail as to any other person who claims or may claim adversely to Defendant Weeks as if Defendant Weeks had brought a quiet title action under HRS § 669–1 (1993).[16]

Third, we hold that, as construed above, COL 2 of the October 18, 1999 complaint order is correct. As the circuit court determined in FOF 15 of the October 18, 1999 complaint order:

> 15. During the preliminary injunction hearing, the parties stipulated to the ad-

**16.** HRS § 669–1 provides in pertinent part that:

(a) Action may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim.

(b) Action for the purpose of establishing title to a parcel of real property of five acres or less may be brought by any person who has been in adverse possession of the real property for not less than twenty years. Action for the purpose of establishing title to a parcel of real

property of greater than five acres may be brought by any person who had been in adverse possession of the real property for not less than twenty years prior to November 7, 1978, or for not less than earlier applicable time periods of adverse possession....

(c) Action brought to claim property of five acres or less on the basis of adverse possession may be asserted in good faith by any person not more than once in twenty years, after November 7, 1978.

mission of various exhibits, including (a) Plaintiff's deed which located her kuleana on the "southerly side of the trail (*Private Ownership* ) and *along . . . Land Commission Award 7713, Apana 7 to V. Kamamalu* " (Course No. 2, Deed dated July 17, 1997 from Uddo to Plaintiff [Pl.Ex. A] (emphasis added); *see also* Course No. 19, Deed dated December 8, 1984 from Trustees to John and Helen Weeks, Ex. D–11; 1961 survey map attached to the 1987 Stipulation [Ex. D–3] and Court order in [the quiet title action] [Ex. D–6, last page] ) and (b) the 1987 Stipulation which affirmed *that the trail parcel is part of L.C. Aw. 7713 to Victoria Kamamalu, by 1985 known as "John D. Weeks Trail."* (Ex. D–3, Page 2 and 1985 survey attached as last page of Ex. D–3)

(Emphases and some brackets in original.) [17]

Plaintiff's Exhibit A supports that the subject trail is privately owned. Defendant Weeks's ownership of the subject trail is evidenced by Defendant's Exhibit D–11, a certified copy of the November 8, 1984 quitclaim deed from the Trustees to Defendant Weeks's parents whereby the Trustees conveyed "all of their right, title and interest in and to" the subject trail, described therein by metes and bounds, to Defendant Weeks's parents. As part of his motion for summary judgment on the complaint, Defendant Weeks submitted Exhibit D 26, a certified copy of an October 15, 1979 warranty deed whereby Defendant Weeks's parents conveyed the subject trail to him. Based on this evidence and inasmuch as Plaintiff did not introduce any evidence whatsoever to controvert Defendant Weeks's claim of ownership of the subject trail, we agree with the circuit court that, "[a]s between Plaintiff and Defendant Weeks, Defendant Weeks owns the legal title to the trail parcel."

## 2. Principles governing rights of way under HRS § 7–1

▪ It is well established that HRS § 7–1 confers a right of way to tenants' allodial lands. *Rogers v. Pedro*, 3 Haw.App. 136, 139, 642 P.2d 549, 552 (1982) (citing *Palama v. Sheehan*, 50 Haw. 298, 440 P.2d 95 (1968); *see Santos v. Perreira*, 2 Haw.App. 387, 390, 633 P.2d 1118, 1122 (1981)).[18] However, "[f]ew Hawai'i cases have interpreted the right-of-way provision under HRS § 7–1[.]" *Haiku Plantations Ass'n v. Lono*, 1 Haw. App. 263, 266, 618 P.2d 312, 314 (1980). Before discussing the merits of Plaintiff's contention, we provide an overview of the seminal cases addressing a kuleana owner's right to a right of way: *Henry v. Ahlo*, 9 Haw. 490 (1894); *Palama;* and *Rogers*.

*Henry* is the earliest case to consider a kuleana owner's right to a right of way based upon necessity.[19] In *Henry*, the plaintiff owned a kuleana located a short distance from a government road. In order to reach the government road, the plaintiff had to cross over land being leased by the defendant who had blocked access to the government road by placing a fence on his property. *Id.* at 490. The Commissioner of Private Ways ruled that the plaintiff was entitled to have a road ten feet wide running from the government road over the defendant's land and continuing on to the plaintiff's land.

The Supreme Court of the Republic of Hawai'i affirmed, holding in pertinent part in *Henry* that:

origin is traceable to the Great Mahele. *See Rogers*, 3 Haw.App. at 139, 642 P.2d at 551–52. In this case, it is undisputed that Plaintiff's parcel is a kuleana whose origin is traceable to the Great Mahele.

19. We note that *Henry* does not specify whether the kuleana owner asserted this right based on The Civil Code of the Hawaiian Islands, also known as the Hawai'i Civil Code [hereinafter, the HCC] § 1477 (1859)—the predecessor statute to HRS § 7–1—or any other statutory right. However, it is clear that the parcel at issue therein was a kuleana.

---

17. Plaintiff contends that this FOF is clearly erroneous. However, Plaintiff herself offered Plaintiff's Exhibit A which was received into evidence by stipulation at the hearing on Plaintiff's TRO Motion. In addition, Defendant Weeks's Exhibits D–3, D–11, and D–6 were received into evidence by stipulation at the hearing on Plaintiff's TRO Motion. Inasmuch as the record supports FOF 15 of the October 18, 1999 complaint order, we hold that it is not clearly erroneous.

18. In order for the owner of a landlocked parcel to establish entitlement to a right of way under HRS § 7–1, it must be shown that the landlocked parcel is an ancient tenancy or kuleana whose

*[The plaintiff] must have a way to and from his land. It is a right which he acquired with the land.* There may not have been a road of a certain width, and perhaps not always in exactly the same location; it may have only been a trail to the plaintiff's land across the crown land. *The location is created by use; the plaintiff could not have a number of roads; he is only entitled to one, and the one he had been using was closed up by defendant,* and when the matter came before the commissioner it devolved on him to direct where the location of the road should be, also how wide it should be, *at the same time taking into consideration the necessity for the road and the best location to place it, so as not to interfere, more than was necessary, with the occupation of land over which the road passed.* . . .

*Id.* at 491 (emphases added).

The *Henry* court went on to rely upon *Kalaukoa v. Keawe,* 9 Haw. 191 (1893), a case which does not involve kuleana land but addressed the law of easements of necessity, stating:

We do not regard it necessary to consider the question of prescriptive right, as this is a case of a way of necessity. This question of right of way is fully discussed in the case of *[Kalaukoa].* . . . *The court there holds, in speaking of where the existence of a right of way is only provided for, that the location, width & [uses],* "must be ascertained by [other] evidence, such as the condition, or character of the lands, and the uses made of them, or the acts or acquiescence of the parties." . . . .

9 Haw. at 491 (quoting *Kalaukoa,* 9 Haw. at 193) (emphasis added). The *Henry* court concluded that "the decision of the commissioner was right in ordering a road opened where he did. It is not in any way unreasonable and conforms to the necessities of the case." *Henry,* 9 Haw. at 492.

In *Palama,* the plaintiffs instituted an action to quiet title to a tract of land situated in the ahupua'a[20] of Kalāheo on the island of Kaua'i. 50 Haw. at 298, 440 P.2d at 96. The defendants owned four separate kuleanas, three of which were located directly makai of the plaintiffs' land, and the remaining parcel located within the boundaries of the plaintiffs' land, near its makai boundary. *Id.* at 298–99, 440 P.2d at 96. The defendants claimed, *inter alia,* a right of way through the plaintiffs' land for ingress and egress based on "ancient Hawaiian rights or by necessity," *id.* at 298, 440 P.2d at 96, as provided in HCC § 1477.[21]

Following a non-jury trial, the circuit court ruled that defendants were " 'entitled to a reasonable use of the now existing right of way through plaintiffs' land to gain ingress and egress from their respective parcels of land', and that 'this will no way entail any additional burden on plaintiffs for the right of way is now there and in existence. . . .' " *Id.* at 299, 440 P.2d at 96–97. On appeal, the plaintiffs argued that there was no evidence adduced at trial to show that a right of way existed, based on ancient Hawaiian use or necessity.

Examining ancient Hawaiian tradition, custom, and use, the *Palama* court observed that, although the Great Mahele awarded whole ahupua'as, the rights of native tenants

**20.** "[I]n ancient Hawai'i, the division of land known as an ahupuaa generally ran from the sea to the mountains. Such division enabled a chief and his people to obtain fish and seaweed from the ocean, and fuel, canoe timber and mountain birds, and the right of way to obtain these things." *Palama,* 50 Haw. at 300, 440 P.2d at 97 (citing *In Re Boundaries of Pulehunui,* 4 Haw. 239 (1879)).

**21.** HCC § 1477 provides:
Where the landlords have obtained, or may hereafter obtain, allodial titles to their lands, the people on each of their lands shall not be deprived of the right to take firewood, house-timber, aho cord, thatch, or ki leaf, from the land on which they live, for their own private use, but they shall not have a right to take such articles to sell for profit. The people shall also have a right to drinking water, and running water, and the right of way. The springs of water, running water, and roads, shall be free to all, on all lands granted in fee simple: provided, that this shall not be applicable to wells and water-courses, which individuals have made for their own use.
We note that HCC § 1477 has not been amended since its enactment in 1859 and reads precisely the same as HRS § 7–1 (1993). *See* HRS § 7–1, *supra* note 2.

who held kuleana lands within the ahupua'as were expressly reserved, "Koe no Kuleana o Kanaka," *id.* at 300, 440 P.2d at 97, and set forth in pertinent part in HCC § 1477. The evidence at trial showed that there were two possible routes to the defendants' land. *Id.* at 299, 440 P.2d at 97. A mauka route, running directly through the plaintiff's land to the defendants' property [hereinafter, the mauka trail], and an easterly route, running "circuitously along a government road to a private plantation road which paralleled the ocean, then turned down the bottom of a ravine and along the beach to defendants' parcels." *Id.* at 299–300, 440 P.2d at 97. At trial, Elizabeth K. Mederios [22] and others testified that her (Mederios') parents, grand-parents and great-grandparents used the mauka trail to go to and from their kuleana. *Id.* at 301, 440 P.2d at 97–98. The *Palama* court held that "[s]uch testimony was suffi-cient evidence on which the trial court could find that an ancient Hawaiian right of way through plaintiffs' land existed and was used as such by defendants' predecessors in title." *Id.* at 301, 440 P.2d at 98.

On the issue of right of way based upon necessity, the *Palama* court pointed out that the evidence at trial showed that the ravine on the easterly route was flooded with water whenever it rained, preventing use of that route as a right of way for ingress and egress to the defendants' parcels at such times. *Id.* at 301, 440 P.2d at 98. Quoting *Kalaukoa*, the *Palama* court stated:

A way of necessity is merely a way created by an implied grant or reservation, the necessity being only evidence of the inten-tion of the parties to make the grant or reservation. . . . *And even where there is not a strict, but only a reasonable necessi-ty, as where some other way is possible though very difficult or expensive, this, if coupled with additional evidence of a way actually used and which is apparent and of a continuous nature, has been held to be sufficient evidence of an intention to grant or reserve a way.*

*Id.* (internal quotation marks omitted). Based upon the evidence, the *Palama* court held that the defendants were also entitled to a right of way through the plaintiffs' land as a means of ingress and egress by reason of necessity. *Id.* (citing *Henry,* 9 Haw. 490).

In *Rogers,* the Intermediate Court of Ap-peals (ICA) addressed a kuleana owner's right to an easement under HRS § 7–1 based upon necessity. 3 Haw.App. at 136, 642 P.2d at 549. In that case, the trial court determined that the plaintiff/kuleana owner was entitled to an easement by necessity under HRS § 7–1 through a portion of the defendant's property. *Id.* at 138, 642 P.2d at 551. The ICA affirmed, holding that the evidence clearly established that the plaintiff was entitled to the right of way based not only on an express reservation contained in the applicable land grant, but also on HRS § 7–1, by reason of necessity, inasmuch as the kuleana was landlocked. *Id.* at 139–40, 642 P.2d at 552. With respect to the location of the easement drawn by the trial court, the ICA held "that the location of the easement by the trial court is not in any way unreason-able and that it conforms to the necessities of the case." *Id.* (citations omitted).

### 3. Right of way under HRS § 7–1 based on ancient or historical use

As previously stated, the circuit court in the instant case determined that Plaintiff had essentially failed to prove she was entitled to a right of way over the makai portion of the subject trail based upon an-cient or historical use under HRS § 7–1. We disagree and hold that, viewing the mate-rials in the record in the light most favorable to Plaintiff, as we are required to do on summary judgment, *Keka,* 94 Hawai'i at 221, 11 P.3d at 9, there exists a genuine issue of material fact as to ancient or historical use of the subject trail.

The October 18, 1999 complaint order sets forth the following relevant FOFs and COLs:

[FOFs]

*"Ancient" or "Historical" Use of Trail Parcel*

39. The certified copies of Land Com-mission Award 7361, Apana 3 to Kapuipui, Plaintiff's kuleana (Ex. D–17a), and Royal Patent 6367 thereon (Ex. D–17c), show

---

**22.** *Palama* does not specify who Mederios is or in what capacity she testified.

that in 1854 the land lying to the north of Plaintiff's kuleana was another kuleana, L.C. Aw. 11047, Apana 1 (as indicated by the 1854 survey map for L.C. Aw. 7361, Apana 3).

40. The call "ma aina Poopuu" for the north boundary of Plaintiff's kuleana in the Land Commission Award is in the Hawaiian language and is subject to judicial notice. *Hapai v. Brown*, 21 Haw. 499, 503 (1913); *Estate of Ii v. Judd*, 13 Haw. 319, 325 (1901); *McCandless v. Waiahole Water Co.*, 35 Haw. 314, 322 (1940); Section 1–13 HRS ("English and Hawaiian are official languages of Hawai'i").

41. The phrase "ma aina Poopuu" means "along the land of Poopuu"; in other words, in 1854 the north boundary of L.C. Aw. 7361, Apana 3, Plaintiff's kuleana, ran along and was bounded by L.C. Aw. 11047, Apana 1, not a trail. *In Re Application of Territory to Register and Confirm Title at Kakaako*, [30 Haw. 666], . . . 669 [ (1928) ] ("ma ka aina o Aupni" means along the land of the government).

42. According to Defendant Weeks, who worked as an employee of his father, a licensed surveyor, and who is familiar with the lands in question, his father prepared a modern survey in 1961 which shows that the two kuleana, L.C. Aw. 7361, Apana 3 to Kapuipui, Plaintiff's kuleana, and L.C. Aw. 11047, Apana 1 to Poopuu were then located some distance apart and were not then adjoining in 1961. (Exs.D–3, D–9)

43. **Plaintiff offered no evidence to explain why, if the trail parcel was allegedly "ancient" origin, the Land Commission award surveyor did not describe the presence of such an "ancient" trail in 1854 along the north side of Plaintiff's kuleana, L.C. Aw. 7361, Apana 3, or why the kuleana and trail parcel were subsequently located as they were in Weeks' 1961 survey.**

44. Plaintiff's expert, Don McIntosh, a licensed surveyor, initially declared that a trail or passage way physically exists on

the ground (Affidavit filed November 10, 1998, Page 2, ¶ 3.B) within the bounds of several recorded conveyances and, further, that "this trail is historical" and "has existed as far back as there are survey records for this area."

45. However, eight days later, Don McIntosh stated that he did not conduct an investigation of records prior to 1908 (McIntosh Deposition, Page 35, lines 18–21), even though Land Commission surveys existed for the area since at least 1851. (Exs. D–17a, et seq.)

46. Nor did he seek information from kamaaina or Keauhou property owners regarding the trail. (McIntosh Deposition, Page 38, line 2–9; Page 39, lines 15–25; Page 40, line 1)

47. Although he acknowledged that "usage" of the trail was important, Don McIntosh declined to say the trail was "historical" (Id., Page 24, lines 9–11) and offered no information on who actually used the trail or when.

48. He did not know anything of a Keauhou "trail system." (Id., Page 20, lines 1–12; Page 39, lines 17–25; Page 40, lines 1–5)

49. In essence, Don McIntosh merely confirmed that a trail physically exists ( [McIntosh Deposition], Page 13, lines 19–22; Page 27, lines 2–19) but did not go beyond this fact in his study (Id., Page 34, lines 6–14) to determine who may have used the trail in the past (Id., Page 21, lines 19–25; Page 27, lines 2–15).

50. **At the preliminary injunction hearing, Plaintiff offered the 1908 map prepared by Baldwin (Pl.Ex.E) that shows a "horse trail" "15 ft. wide" running on the north side of her kuleana. . . .**

51. **However, in her July 1999 admission answers Plaintiff later stated she could no longer validate such facts to be true. (Answers to Request for Admissions Nos. 20, 21) (See Finding No. 26, *supra* )[23]**

---

**23.** FOF 26 of the October 18, 1999 complaint order states: "On August 30, 1999, Defendant Weeks filed Plaintiff's answers to requests for admissions dated July 22, 1999, which answers

contain statements that conflict with Plaintiff's representations made at the preliminary injunction hearing. . . . (See Exs. D–30, D–31, Answers

*FINDINGS OF FACT ON THE MER-ITS*

74. There are three (3) possible theories which support Plaintiff's demands if she were allowed to litigate what her predecessors should have litigated in [the quiet title action]:

 a. A grant or reservation, Section 7–1, HRS;

 b. A necessity by implied grant;[ ]

 c. The trail area is a public road

 *Under the Highway Act of 1892, the lawful owner of the trail parcel having failed to exercise ownership prior to 1892; or

 *Because the trail parcel, being unawarded land, remains in the public domain.

75. However, Plaintiff does not present her facts and legal theories with much precision, accuracy or consistency. . . .

76. Evidence relating to the actual use of the trail parcel and the actions of affected persons and landowners since 1854 would be probative of one or more of Plaintiff's theories but Plaintiff offers little evidence on the point.

 . . . .

80. The only evidence concerning the actual use of the trail parcel directly to Mamalahoa Highway appears in Defendant Weeks' declaration dated July 1, 1999 filed July 8, 1999 (Declaration, ¶¶ 16, 17, 18, 25, 26) and preliminary injunction hearing testimony, which Plaintiff did not refute with counter-affidavits or other evidence.

81. All other evidence on actual use is that Plaintiff and her most immediate predecessors Squire, Stromberg and Uddo, used only the mauka portion of the trail parcel to gain access to the Trustees' road reserve and with Defendant Weeks' parents and his <u>permission</u>.

82. As to Don McIntosh's statement that Plaintiff is "entitled" to use the trail to go directly to Mamalahoa Highway, such testimony is not admissible. *Santos v.*

to Request Nos. 11, 15, 16, 17, 18, 19, 20, 21, 23,

*Perreria* [*Perreira*], [2 Haw.App. 387, 633 P.2d 1118 (1981) ].

83. Finally, several maps were offered for various purposes during the preliminary injunction hearing (Pl. Exs. B, D, E, F; Def. Exs. D–3, D–6, D–8, D–9, D–13, D–14, D–16, D–17) and in support of Defendant Weeks' motion for summary Judgment (Exs. D–17a, et seq., D–27).

84. The tax maps (Pl.Ex.B, F), 1908 Baldwin Map (Pl.Ex.E), as well as Defendant Weeks' Exhibits D–8 and D–27, were offered for limited purposes to show the properties' relationship one to the other and their location on the ground.

85. The other maps and surveys, such as the 1987 Stipulation in [the quiet title action] (John D. Weeks' 1961 survey map, Ex. D–3), the Order in [the quiet title action] (same 1961 survey map, Ex. D–6, D–9) and the 1985 [Agreements] (John D. Weeks' 1985 survey map, Exs. D–13, D–14, D–16), contain statements which were adopted by the parties and their respective predecessors. Rules 803(a) and 803(b)(15), HRE.

86. The documents called the 1985 "Road Easement," or 1985 [Agreements], 1985 Squire deed and 1987 Stipulation in [the quiet title action] are not ambiguous and do not indicate, as Plaintiff asserts, that the contracting parties acted mistakenly, out of ignorance or with the limited intent only to establish a "secondary" way for the kuleana, reserving to the kuleana owner the use of the trail parcel as the "main" trail for direct access makai to Mamalahoa Highway (assuming the trail parcel was or is the "main" trail).

87. There is nothing in the 1985 [Agreements] or 1987 Stipulation which indicates that Defendant Weeks' predecessors, by admission or adoption of statements or otherwise, admitted that the trail parcel was the "main" trail or "traditional, ancient or historical kuleana access."

 . . . .

[COLS]

1. Plaintiff claims the beneficial use of a "right-of-way" or "easement" . . . over

25, 26, 44[.] )''

portions of L.C. Aw. 7713, Victoria Kamamalu's award, under Section 7-1, HRS....

2. As between Plaintiff and Defendant Weeks, Defendant Weeks owns the legal title to the trail parcel.

*Burden of Proof*

3. **It is presumed that Defendant Weeks, as the owner of the legal title to the trail parcel, is also the owner of the full beneficial title to the trail parcel. This presumption may be rebutted only by clear and convincing evidence. Rule 304(c)(1), HRE.**

4. **Plaintiff must rebut the presumption that Defendant Weeks owns the full beneficial title to his land by clear and convincing proof. Rule 304(c)(1), HRE.**

5. **Clear and convincing proof means that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established and requires the existence that a fact be highly probable.** *Iddings v. Mee–Lee,* 82 Hawai'i 1, 13 [919 P.2d 263] (1996).

6. **In order to prove that she may use Defendant's land for a right-of-way, Plaintiff must prove that she is entitled to such a right-of-way in accordance with requirements of state law.**

7. **The mere fact that a trail may exist on Defendant Weeks' land or that the use of that trail may be convenient for Plaintiff does not give Plaintiff the right to use the same.**

8. **Plaintiff has the burden of proving that she has a right to use Defendant Weeks' land for a right-of-way.** *Harrison v. Davis,* 22 Haw. 465, 466 (1915); *State v. Zimring,* [58 Haw. 106, 110–11, 566 P.2d 725 (1977) ]; *Maui Land and Pineapple Co. v. Infiesto,* 76 Hawai'i 402, 407–08 [879 P.2d 507] (1994).

9. Plaintiff never offered L.C. Award 7713, Apana 7 into evidence and the Court cannot determine if the reservations therein (if any) secured to Plaintiff any rights....

(Underscored emphases and some brackets in original.) (Bold emphases added.) Plaintiff takes issue with all of the foregoing FOFs and COLs, other than FOFs 39 to 42, 46 to 48 and 51.

The circuit.court's October 18, 1999 counterclaim order sets forth the following relevant FOFs:

[FOFs]

11. Plaintiff claimed that she had the right to use the trail parcel to go directly makai to Mamalahoa Highway since that was allegedly the historical and customary usage made of the trail parcel for the kuleana's benefit and recent usage made by Plaintiff and her immediate predecessors.

12. However, there is no evidence that Plaintiff, herself, used the trail parcel to go directly makai to Mamalahoa Highway or that her immediate predecessors (Squire, Stromberg or Uddo) or other past owners of the kuleana used or were reputed to use the trail parcel to go directly makai to Mamalahoa Highway.

13. Plaintiff made no effort to investigate the usage of the trail by others or its history except to retain Don McIntosh to conduct a cursory study (which was limited to the determination of the physical description and location of a passage way on the ground).

14. Based on the record, including Plaintiff's pretrial and settlement conference statements, it does not appear that Plaintiff conducted a complete investigation with public agencies, such as the Bureau of Conveyances, Archives, Department of Land and Natural Resources, or private sources, such as the Trustees or the Bishop Museum's libraries, or conducted interviews with kamaaina who own or owned or occupy or occupied properties in Keauhou 1st or who would have some knowledge of the kuleana, the trail parcel and past uses made of the trail parcel.

15. Plaintiff's own preliminary exhibits or Defendant Weeks' exhibits to which she consented contain statements in maps or surveys that Plaintiff's predecessor or Plaintiff, herself, adopted to the effect that (a) the trail parcel in 1961 was owned by the "*B.P. Bishop Estate* " (Exs.D–3, D–6), (b) the trail parcel in 1985 was called the

*"John D. Weeks Trail"* (Ex. D–3, last page; Ex. D–14, last page) and (c) the trail parcel in 1997 was in *"private ownership"* (Pl.Ex. A, Course Nos. 1 & 2).

16. Plaintiff nevertheless alleged in her Complaint and motion for preliminary injunction (a) that she and her predecessors *actually used* the trail parcel, (b) that the trail parcel was the *historical, customary or ancient way* which afforded passage from the kuleana directly to Mamalahoa Highway or (c) that the trail parcel was a *public road.*

17. Plaintiff finally asserted that public policy requires the Court to compel Defendant Weeks to allow her to use the trail parcel directly to Mamalahoa Highway (a) because the 1985 [Agreements] set forth in the 1987 Stipulation were intended to be only a "temporary" arrangement that reserved to Stromberg and Uddo (and their assigns such as Plaintiff) the right to continue to use the "main" access and (b). because Plaintiff can establish that the "main" access was or should be the trail parcel and (c) because res judicata must yield to this greater policy.

18. Plaintiff contends that she would be "landlocked" otherwise.

(Emphases in original.) Of the foregoing FOFs, Plaintiff challenges FOFs 15, 17, and 18.

■ This court has held that "[f]indings of fact ... that are not challenged on appeal are binding on the appellate court." *Okada Trucking Co., Ltd. v. Bd. of Water Supply,* 97 Hawai‘i 450, 458, 40 P.3d 73, 81, *reconsideration denied,* 101 Hawai‘i 233, 65 P.3d 180 (2002) (citing *Taylor–Rice· v. State,* 91 Hawai‘i 60, 65, 979 P.2d 1086, 1091 (1999)). We are, therefore, bound by FOFs 39 to 42, 46 to 48, and 51 of the October 18, 1999 complaint order, as well as FOFs 11 to 14, and 16 of the October 18, 1999 counterclaim order.

FOFs 39 to 41 of the October 18, 1999 complaint order establish that, at the time of the Land Commission Award respecting the kuleana, the land running along the northern boundary of the kuleana in 1854 was another kuleana and not the subject trail. Plaintiff, however, introduced into evidence a photocopy of a 1908 map depicting the presence of a "horse trail" running along the northern boundary of the kuleana to Mamalahoa Highway. The 1908 map was originally received into evidence by stipulation as Plaintiff's Exhibit E during the hearing on Plaintiff's TRO Motion.[24] In his July 8, 1999 memorandum in support of his motion for summary judgment on the complaint, Defendant Weeks called the circuit court's attention to the 1908 map which he attached as Exhibit D–18 to his memorandum for the purpose of showing that it was "Plaintiff's only evidence that the trail was the 'historical' access for the kuleana[.]"[25] Inasmuch as the evidence showed that, at the time of the original land commission award in 1854, the land running along the northern boundary of the kuleana was another kuleana and not the subject trail, Defendant Weeks argued that the subject trail was "actually of modern origin, not of 'historical' or 'ancient' origin as Plaintiff alleges."

In his deposition, Plaintiff's expert, Don McIntosh, testified that, based on the 1908 map, he would agree that "the [subject] trail exists on paper historically," but later clarified that he would characterize the access as an "old" rather than "historical" access. FOFs 46 to 48 of the October 18, 1999 complaint order establish that McIntosh did not interview kama‘aina or Keauhou property owners regarding the subject trail, nor did he offer any information on who actually used the subject trail or when. FOF 13 of the October 18, 1999 counterclaim order further establishes that Plaintiff did not investigate the usage or history of the subject trail other than by retaining McIntosh to determine the physical description and location of the subject trail. In view of the foregoing, the

---

24. In stipulating to the admission of Plaintiff's Exhibit E into evidence, Defendant Weeks stated simply, " 'E' is a portion of a map. Uh, again, this came from Bishop Estate. We have no objection." The circuit court responded, " 'E' is received."

25. Plaintiff also relied upon the 1908 map in her August 23, 1999 memorandum in opposition to Defendant Weeks's motions for summary judgment to argue that a genuine issue of material fact existed as to the ancient or historic use of the subject trail.

circuit court concluded that Plaintiff had failed altogether to prove that she had a right to use the subject trail based on historical or ancient use under HRS § 7–1.

■ We first point out that, to the extent COLs 3 to 8 of the October 18, 1999 complaint order reflect that the circuit court assessed the evidence brought by Plaintiff under a clear and convincing standard, we hold the circuit court applied the incorrect standard. In determining whether summary judgment was appropriate either on the complaint or the counterclaim, the circuit court was required to view the evidence in the light most favorable to Plaintiff as the non-moving party. *Keka*, 94 Hawai'i at 221, 11 P.3d at 9. In FOF 77 of the October 18, 1999 complaint order, the circuit court does state that:

> 77. The record, even when viewed most favorably toward Plaintiff as the Court must on summary judgment and assuming the probative value of Plaintiff's exhibits, only shows (a) that a passage way now exists on the ground on the north side of Plaintiff's kuleana, (b) *that a surveyor observed the trail in 1908* and (c) by inference, that the passage way was used but by persons unknown and under unknown authority.

(Emphasis added.) However, the circuit court continues in FOFs 78 and 79 of the October 18, 1999 complaint order:

> 78. Thus, a trier of fact might only find that the trail parcel functioned as some kind of passage way.
>
> 79. In the absence of evidence as to *who* opened the trail, *when* that event took place, under *what authority,* for *whose benefit,* the *duration* of any use, the *cessation* of any use and the *connection* between the trail and Plaintiff's kuleana in terms of use, the trier of fact could make no further findings.

(Emphases in original.)

■ FOF 79 of the October 18, 1999 complaint order misapprehends Hawai'i case law. No Hawai'i cases specifically set out the parameters for defining what is sufficient to constitute "ancient" or "historic" use for purposes of establishing a claim to a right of way under HRS § 7–1. As previously noted, the *Palama* court relied solely upon the testimony of a single named witness who stated that her parents, grandparents and great-grandparents used the trail in question to conclude that there was sufficient evidence to support the trial court's finding of "an ancient Hawaiian right of way." 50 Haw. at 301, 440 P.2d at 98. In the instant case, Plaintiff did not introduce any evidence of her predecessors' or others' use of the makai portion subject trail. Regardless, we believe that the 1908 map, when viewing the admissible facts[26] with respect thereto in the light most favorable to Plaintiff and drawing all inferences therefrom, establishes at a minimum that:

26. "It is axiomatic that a motion for summary judgment should be decided on the basis of admissible evidence." *Munoz v. Yuen,* 66 Haw. 603, 605, 670 P.2d 825, 826 (1983) (per curiam) (citations omitted). We note that on August 30, 1999, two days prior to the September 1, 1999 hearing on Defendant Weeks's motions for summary judgment on the complaint and counterclaim, Defendant Weeks filed "evidentiary objections" regarding, *inter alia,* the 1908 map "in order to *reserve his right* to preclude Plaintiff from relying upon or offering evidence in response to the summary judgment motions filed herein which is inconsistent with Plaintiff's [July 22, 1999] responses to the requests for admissions." (Emphasis added.) Specifically, Defendant Weeks pointed to three requests for admissions implicating the foundation of the 1908 map to which Plaintiff had responded:

> Objected to as vague and ambiguous, not relevant, compound, and requiring review of documents not provided as required by Rule 36 HRCP. Without prejudice to the objection the following is stated. Plaintiff cannot admit or deny this Request at this time and has no knowledge after reasonable inquiry, and the information known or readily available to her provides no answer at this time.

Inasmuch as Plaintiff objected to the relevant requests for admissions, and considering that the 1908 map had been admitted into evidence by stipulation of the parties at the hearing on Plaintiff's TRO Motion, Defendant Weeks's claim of inconsistency lacks merit. Regardless, notwithstanding his "evidentiary objection," Defendant Weeks himself stated at the September 1, 1999 hearing on his motions for summary judgment that, based on the 1908 map, "[w]e know in 1908 a surveyor for the [T]rustees saw something on the ground.... *[A] trail was there.*" Defendant Weeks' also states in his answering brief that "[a]ccording to the *1908* map ..., the surveyor ... observed the presence of a 'horse trail' running along the northerly boundary of [Plaintiff]'s parcel." (Emphasis in original.)

(1) the subject trail has been in existence for over ninety years; (2) the subject trail is a well defined trail or path that runs across the entire northern boundary of the kuleana in both the makai and mauka direction; and (3) the subject trail must have been frequently traversed for some time prior to 1908 in order for it to have become well defined by 1908. Based on this evidence, there clearly exists a genuine issue of material fact as to the ancient or historic use of the subject trail.

As indicated above, in FOF 79 of the October 18, 1999 complaint order, the circuit court focuses on evidence that the Plaintiff failed to introduce, including evidence of "*who* opened the trail, *when* that event took place, under *what authority,* for *whose benefit,* the *duration* of any use, the *cessation* of any use and the *connection* between the trail and Plaintiff's kuleana in terms of use[.]" (Emphases in original.) However, nothing in *Palama* or other pertinent Hawai'i cases can be read to require such a stringent evidentiary showing on summary judgment brought not by Plaintiff, but by Defendant Weeks. Plaintiff's burden on summary judgment was to establish the existence of a genuine issue of material fact, which we hold the Plaintiff satisfied. *See Richards v. Midkiff,* 48 Haw. 32, 39, 396 P.2d 49, 55 (1964) ("It should be remembered that under a motion for summary judgment the question to be decided is simply whether there is a genuine issue as to any material fact and not how that issue should be determined.") Therefore, inasmuch as there exists a genuine issue of material fact as to the ancient or historic use of the subject trail, the circuit court erred in granting Defendant's motion for summary judgment on the complaint as well as his motion for partial summary judgment on the counterclaim.

### 4. Right of way under HRS § 7-1 based on necessity

With respect to the issue of necessity, the October 18, 1999 complaint order sets forth the following relevant COLs, all of which Plaintiff challenges on appeal:

"*Necessity (Convenience)* "

. . . .

19. Plaintiff contends that the "necessity" of the case gives the Court an independent basis to override the preclusive bar of res judicata to excuse Plaintiff of her proof burdens. . . .

20. However, there is no showing that such a "necessity" exists or can override res judicata's bar in this case. The facts which Plaintiff rely upon to prove a "necessity" exists are merely Plaintiff's convenience and desire to improve her economic advantage.

21. Further, in light of Plaintiff's current and undisturbed use of the mauka portion of the trail parcel and the Trustees' road reserve, any action based on such a "necessity," even if allowed, would not be "ripe" for judicial review. *State v. Fields,* 67 Haw. 268, 274–75, 686 P.2d 1379 (1984); *Trustees of Office of Hawaiian Affairs v. Yamasaki,* 69 Haw. 154, 170–72, 737 P.2d 446 (1987); *Convention Center Authority v. Anzai,* 78 Hawai'i 157, 162, 890 P.2d 1197 (1995).

22. Since Plaintiff is not being denied access to her kuleana by the Trustees or Defendant Weeks, the Court will not rule on a hypothetical case of "necessity."

The circuit court also made the following COLs on the issue of necessity, all of which Plaintiff challenges on appeal, in its October 18, 1999 counterclaim order:

8. Plaintiff's assertion that public policy (or, as she claims, "necessity") must provide her a key to "unlock" her kuleana is not supported by the facts which show that she is using the access described in the 1985 [Agreements] and 1987 Stipulation.

9. The Court is not required to review Plaintiff's claim of "necessity" when the dispute presented is not "ripe."

10. Plaintiff also entered unto the portion of the trail parcel that is not included in the 1985 [Agreements] or 1987 Stipulation and removed personal property therefrom that belonged to Defendant Weeks without his permission.

### a. Existence of necessity

In essence, the circuit court determined that Plaintiff failed to show any existence of

necessity, inasmuch as Plaintiff had "current and undisturbed use" of the mauka portion of the subject trail and the Old Poi Factory Road as a means of ingress and egress to and from the kuleana. We cannot agree.

In *Hill v. Kennoy, Inc.*, 522 S.W.2d 775, 776–77 (Mo.1975) (en banc), the plaintiffs brought an action against an adjoining land-owner, seeking to establish by reason of strict necessity a private road across the adjoining landowner's property. After judgment was entered in favor of the defendant, the plaintiffs appealed to the court of appeals. *Id.* at 777. The defendant moved to dismiss the plaintiff's appeal, arguing that the case was moot insofar as the plaintiffs had since acquired access from their property to a public road. *Id.* The plaintiffs had in fact entered into a lease with a railroad to a parcel of land adjacent and parallel to the defendant's property and were using the leased premises as a means of ingress and egress to and from their property. *Id.* Dismissing the plaintiffs' appeal, the court of appeals held, *inter alia*, that the case was moot inasmuch as the plaintiffs had present access to their property. *Id.* The Missouri Supreme Court reversed.

The *Hill* court began its analysis stating:

> The right to a private road over the land of another exists only by way of necessity, and not convenience. One cannot have a way of necessity because it is more convenient than the way one has. It has also been said that if the party seeking a private road has no "legally enforceable right" to use an alternative route, he is entitled to a way of necessity. It was thus stated in *Evans v. Mansfield*, [364 S.W.2d 548, 551 (Mo.1963)]:

> > "So long as the plaintiff had a practicable way to and from his land, either private or public, he had not a right, by necessity, to a way over the defendant's lands … [A] way as here meant, *is a legal way, to use which one has a legal right,* **which may be enforced, and which may not be rightfully interfered with.**"

522 S.W.2d at 777 (some citations omitted) (emphases added).

Reaffirming the rule in *Evans*, the Missouri Supreme Court stated:

> While it is true that it is a good answer to show another way which the party may use, *there is no authority in Missouri cases for holding that such other way will abrogate plaintiffs' claim of necessity where it is not a legally enforceable way.* The rule was positively stated by this court in *Evans v. Mansfield, supra,* at 551:

> > Defendants contend that because there is another road extending … to plaintiff's land the new road is not a way of strict necessity. That would be quite true if the old road (1) were a reasonably practical way to and from plaintiff's land *and (2) if plaintiffs had a legally enforceable right to use said road.*

*Hill*, 522 S.W.2d at 777–78 (emphases added).[27]

Addressing the effect of the plaintiff's current access to a public road via the leased premises, the *Hill* court pointed out that:

> The lease with the railroad which now provides them with access to and from their property was obtained on a basis terminable at will by either party on thirty days notice. As said, the existence of present access neither moots the case nor defeats plaintiffs' claim for a way of strict necessity unless such access is a legally enforceable right. Plaintiffs strongly urge that a terminable-at-will lease does not constitute a legally enforceable right-of-way to which they are entitled under previous holdings.

522 S.W.2d at 778–79 (emphasis added). The *Hill* court went on to state that, notwithstanding the alternate routes which provided access in *Evans* and *Cox v. Tipton*, 18 Mo. App. 450 (1885), "*were merely permissive* and did not involve leases, *these were held to provide no legally enforceable right to ingress or egress,* thus entitling the plaintiff to a private road." 522 S.W.2d at 779 (emphases added). The *Hill* court held: "We think the result must be the same here. The lease

---

27. We note that the Missouri Supreme Court overruled a Missouri Court of Appeals case relied upon by the defendant that appeared to carve out an exception to the *Evans* rule.

being terminable at will, it is not much better than a mere permissive use, and cannot be enforced by the Hills except as to the thirty days notice period." 522 S.W.2d at 779.

We believe the principles espoused by the Missouri Supreme Court in *Hill* and *Evans* to be instructive and hold that a claim of easement by necessity will not be defeated on the basis that an alternate route to the claimant's land exists where the claimant does not have a legally enforceable right to use the alternate route. A right that is terminable at will or merely permissive is not a legally enforceable right. *See also Attaway v. Davis,* 288 Ark. 478, 707 S.W.2d 302 (1986) (landlocked owner entitled to permanent right of way, not permissive, revocable one); *Enzor v. Rasberry,* 648 So.2d 788, 793 (Fla. Dist.Ct.App.1994) ("A common law easement by necessity may be defeated if the claimant has other reasonable and practicable access to a public road. This other access, however, must be *legal* access to a public road; when access is permissive only, it does not act to defeat a claim for a common law easement by necessity." (Internal quotation marks and citation omitted.) (Emphasis in original.)); *Herrera v. The Roman Catholic Church,* 112 N.M. 717, 819 P.2d 264, 268 (N.M.Ct.App. 1991) ("Revocable permission to use another's property does not negate an easement by necessity."); 4 Richard R. Powell, *Powell on Real Property* § 34.07[3] at 34–56 to 34–57 (Michael A. Wolf ed. 2001) ("It is no barrier to the finding of an easement by necessity that the benefitted parcel is accessible under permission to cross other land that is revocable.")

### b. Effect of the 1985 Agreements

Turning to the facts of the instant case, the circuit court determined in COL 10 of the complaint order that:

*1981, 1985 and 1987 Transactions*

10. The agreements entered into by Plaintiff's predecessors Kratt, Squire, Stromberg and Uddo are consistent with *Henry v. Ahlo, supra* (Section 7–1, HRS right-of-way may be determined by agreement); *Oahu Railroad [Railway] and Land Co. v. Armstrong,* 18 Haw. 258, 260–61 (1907) (owner of two or more appurtenant easements effectively conveys only the one which the owner was actually using at the time of conveyance under habendum clause for appurtenances "held or enjoyed therewith"); *Reppun v. Board of Water Supply,* 65 Haw. 531, 551–52, 656 P.2d 57 (1982) (kuleana owner may convey kuleana to another without Section 7–1 appurtenant right to water); *Haiku Plantations Association v. Lono, supra* (right-of-way may be relocated). These agreements operate to establish the kuleana's right-of-way as described therein *by consent.*

(Emphasis in original.) We disagree.

As previously indicated, the July 30, 1985 letter agreement from the Trustees and the July 31, 1985 letter agreement from Weeks Sr. granted Squire, respectively, a "non-exclusive roadway easement over and across [the Old Poi Factory Road]" and a "non-exclusive roadway easement over and across a portion of the [subject trail] from [the Old Poi Factory Road] to a point opposite the existing house on [the kuleana] . . . ." However, notwithstanding that the 1985 Agreements purport to grant Squire a roadway "easement" over the Old Poi Factory Road and the mauka portion of the subject trail, it is plainly evident from the face of the agreements themselves that a license, as opposed to an easement, was created thereby. As defined in the Restatement of Property:

§ 450. Easement.

An easement is an interest in land in the possession of another which

(a) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists;

(b) entitles him to protection as against third persons from interference in such use or enjoyment;

(c) *is not subject to the will of the possessor of the land;*

(d) is not a normal incident of the possession of any land possessed by the owner of the interest[;] *and*

(e) is capable of creation by conveyance.

*Restatement of Property* § 450 (1944) (emphases added).

As previously noted, each of the 1985 Agreements provides that the term of the

"easement" is to commence on August 1, 1985 and runs "for a period of one year and continuing thereafter, *subject to termination by either party on not less than ninety (90) days' prior written notice.*" (Emphasis added.) Inasmuch as each of the 1985 Agreements gives the respective owners of the servient estate—the Trustees and Weeks Sr.—the right to terminate the "easement" upon at least ninety days' notice, the "easement" granted by the 1985 Agreements is undisputably "subject to the will of the possessor of the land[,]" irrespective of the fact that the same right is given to the owner of the dominant estate, Squire. The commentary to the Restatement of Property respecting clause (c) of the definition of easement provides in pertinent part that:

> *i. Easements—Differentiated from licenses.* One having a privilege which entitles him to a limited use of land may or may not hold the privilege subject to the will of the possessor of the land. *The fact that the privilege is subject to the will of the possessor renders it comparatively insecure and thereby affects the degree of protection given it as against third persons.* Its relative insignificance, arising out of the fact that it may be terminated at the will of the possessor, also enters into the consideration of the question as to whether it is such an interest in land as comes within the requirements of the statute of frauds. Accordingly, *interests in land which entitle the owner thereof to the use of land in the possession of another, but which are subject to the will of the possessor, have legal attributes which are*

> *so different in their nature and extent from those of easements that such interests, though they may in many respects resemble easements, are given a different name and treated in a different category. Such interests are called licenses* and are treated and discussed under that name (see Chapter 43).[28]

*Restatement of Property* § 450 cmt. i. Therefore, the 1985 Agreements did not, as the circuit court concluded, "operate to establish the kuleana's right-of-way as described therein by consent." (Emphasis omitted.)[29] Rather, they merely set forth the terms and conditions of a revocable license pursuant to which Squire was permitted to use the mauka portion of the subject trail and the Old Poi Factory Road as a means of access to the kuleana.

As for the effect of the 1987 Stipulation in terms of establishing the kuleana's right of access, as discussed *supra,* the one sentence in the 1987 Stipulation that deals with access to the kuleana simply confirms access at the time from the Old Poi Factory Road over a portion of the subject trail to the kuleana as provided under the July 31, 1985 letter agreement. Regardless, insofar as the Trustees, as owners of the Old Poi Factory Road, were not parties to the 1987 Stipulation, the 1987 Stipulation cannot be construed "to establish the kuleana's right-of-way as described therein by consent."[30]

■ Based on the foregoing, it is clear that, even assuming they are still valid and enforceable, the 1985 Agreements only operate to grant Plaintiff a license over and

---

**28.** Chapter 43 of the Restatement of Property defines licenses as follows:

> § 512. Definition of "License."
> The term "license," as used in this Chapter, denotes an interest in land in the possession of another which
> (a) entitles the owner of the interest to a use of the land, and
> (b) arises from the consent of the one whose interest in the land used is affected thereby, and
> (c) is not incident to an estate in the land, and
> (d) is not an easement.

*Restatement of Property* § 512 (1944).

**29.** For the same reason, the October 8, 1981 letter agreement between the Trustees and the Kratts did nothing more than give the Kratts a license to use the makai portion of the subject trail from Mamalahoa Highway to the kuleana. As previously stated, the October 8, 1981 letter agreement, like each of the 1985 Agreements, provides that the term of the "easement" grant would commence on "November 1, 1981 for a period of one year and continuing thereafter, subject to termination by either party of not less than ninety (90) days' prior written notice."

**30.** Indeed, the 1987 Stipulation says nothing about the July 30, 1985 letter agreement pursuant to which Defendant Bishop Estate granted Squire rights to use Old Poi Factory Road to the subject trail as a means of access to and from the kuleana.

across the mauka portion of the subject trail and the Old Poi Factory Road. In view of the revocable nature of that license [31] and our discussion *supra,* Section III.C.4.a, we hold that Plaintiff's claim of easement by necessity under HRS § 7-1 cannot, as a matter of law, be defeated based on the fact that Plaintiff has current, undisturbed use of the mauka portion of the subject trail and the Old Poi Factory Road under the 1985 Agreements.[32] Accordingly, inasmuch as the circuit court erroneously declined to consider Plaintiff's claim of easement under HRS § 7-1 by reason of necessity, Defendant Weeks was not entitled as a matter of law to summary judgment on either the complaint or counterclaim. On remand, the circuit court must address the merits of Plaintiff's claim of a right of way under HRS § 7-1 by reason of necessity.

We point out that, if on remand Plaintiff is able to establish a claim to a right of way based on ancient or historic use and/or necessity under HRS § 7-1, evidence of, *inter alia,* (1) prior use of the subject trail, *see Henry,* 9 Haw. at 491 ("[The plaintiff] must have a way to and from his land. It is a right which he acquired with the land. There may not have been a road of a certain width, and perhaps not always in exactly the same location; it may have only been a trail to the plaintiff's land across the crown land. The location is created by use[.]") and (2) the acts and acquiescence of the parties, *Henry,* 9 Haw. at 490 ("the location, width & [uses] must be ascertained by evidence, such as the condition, or character of the [other] lands

and the uses made of them, or the acts or acquiescence of the parties") (quoting *Kalaukoa,* 9 Haw. at 193) would then be probative in the circuit court's determination of where to draw a right of way that is reasonable and conforms to the necessities of the case, *see Henry,* 9 Haw. at 491-92; *Rogers,* 3 Haw. App. at 140, 642 P.2d at 552. Convenience of one of the parties over the other is not a legitimate ground for locating an easement in a particular place. *See Henry,* 9 Haw. at 491-92.[33]

### D. *Defendant Weeks's Cross–Appeal*

On cross-appeal, Defendant Weeks argues that the circuit court abused its discretion in refusing to conclude that Plaintiff's complaint was frivolous under HRS § 607-14.5. However, in view of our holding that Defendant Weeks was not entitled to summary judgment on either the complaint or counterclaim as a matter of law, this contention plainly lacks merit. *See* HRS § 607-14.5(b) ("In determining the award of attorneys' fees and costs and the amounts to be awarded, the court must find in writing that all or a portion of the claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action.").

## V. *CONCLUSION*

For the foregoing reasons, we vacate the circuit court's: (1) October 18, 1999 order granting Defendant Weeks's motion for sum-

---

**31.** The tenuous nature of the license is further exhibited by the fact that, as previously indicated, Defendant Bishop Estate itself admitted in its response to Plaintiff's first request for admissions that "[t]he Bishop Estate at this time has no written or oral agreements with Christine Durbin to allow her unconditional and permanent access across land owned by The Bishop Estate for the purpose of access to [the kuleana]."

**32.** Based on our review of the record, the current validity of the license under the 1985 Agreements is certainly questionable. Both the July 30, 1985 letter agreement and the July 31, 1985 letter agreement provide that the "easement" is not assignable or otherwise transferable without the *written* consent from the Trustees or Weeks Sr., respectively. As previously noted, Squire conveyed his interest in the kuleana, together

with his rights under the 1985 Agreements, to Stromberg in August 1985. After Stromberg, the United States Government, and then the Uddos, followed by Durbin and finally Bremer, became the owners of the kuleana. Although the written consent requirement could be waived by the parties, and it appears that Defendant Weeks would do so inasmuch as he has asserted throughout the case that the 1985 Agreements govern the rights of the parties, we note that nowhere in the record is there evidence of Defendant Bishop Estate's written consent to the assignment of the "easement" established by the 1985 Agreements.

**33.** The Plaintiff argues in her opening brief that "the kuleana's right to access includes access for a waterline." Inasmuch as the circuit court did not reach this issue and may be required to do so on remand, we decline to address it here.

70

mary judgment on the complaint; (2) October 18, 1999 counterclaim order granting Defendant Weeks's motion for partial summary judgment on Counts II, III, and V of the counterclaim; (3) December 15, 1999 order granting in part and denying in part Defendant Weeks's motion to tax attorney's fees and costs entered; (4) February 28, 2000 order on Defendant Weeks's motion to assess nominal damages in Counts II and III of the counterclaim; and (5) February 28, 2000 judgment; and (6) October 3, 2000 final judgment.[34] We remand this case for further proceedings consistent with this opinion, including a determination of the merits of: (1) Plaintiff's claim of easement by reason of ancient or historic use under HRS § 7–1; and (2) Plaintiff's claim of easement by reason of necessity under HRS § 7–1.

---

**34.** Defendant Bishop Estate asserts that, inasmuch as Plaintiff "made no claim against [it] below, has specified no point of error concerning it on appeal, and has included no argument in her appellate briefs in favor of relief against it[,] ... there is no basis for this Court to reverse the Final Judgment entered by the circuit court below in favor of [it] and against her Complaint." However, as indicated previously, *see supra* note 10, the October 18, 1999 complaint order directs that, *"based upon the ... findings of fact and conclusions of law"* stated therein, "[n]o affir-

mative claim for relief having been advanced against the Trustees under the Complaint, judgment shall also enter thereon against Plaintiff and in favor of the Trustees." (Emphasis added.) Inasmuch as we are vacating the FOFs and COLs set forth in the October 18, 1999 complaint order in their entirety, and the October 3, 2000 final judgment renders judgment on the complaint in favor of Defendant Bishop Estate based thereon, there remains no ground upon which to affirm the final judgment in favor of Defendant Bishop Estate.